# FOR PUBLICATION



FILED
Mar 30 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**A. DAVID HUTSON**
Smith Carpenter Thompson Fondrisi
 Cummins & Lewis, LLC
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IMPERIAL INSURANCE RESTORATION | ) | |
| & REMODELING, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 10A05-1109-SC-478 |
| | ) | |
| JAMES COSTELLO, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Joseph P. Weber, Judge
The Honorable Kenneth R. Abbott, Magistrate
Cause No. 10D03-1103-SC-444

**March 30, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Imperial Insurance Restoration & Remodeling, Inc. ("Imperial") appeals the trial court's order granting judgment in favor of James Costello ("Costello") on its small claims action for breach of contract. Imperial raises three issues for our review, which we consolidate and restate as the following single issue: whether the trial court erred by granting judgment in favor of Costello. We reverse and remand.

**Facts and Procedural History**

Imperial is in the business of repairing and restoring residential and commercial property after it has been damaged by fire, water, wind, or other causes. It receives business referrals from insurance companies or from other intermediaries when insurance policyholders file property damage claims. James Costello lives with his wife, Lisa Costello ("Lisa"), (collectively, "the Costellos") in a house in Charlestown, Indiana that is owned by Lisa and covered by an insurance policy in her name.

On November 21, 2010 or November 22, 2010, a pipe in the Costellos' house burst and released large amounts of water. When Costello returned from work that day, he turned the water line off and he and Lisa placed fans and a dehumidifier in their basement to control the water damage. Lisa contacted the insurance company, who then contacted Imperial and provided the Costellos' contact information. Imperial called the Costellos and scheduled a time to go to their house and perform emergency services.

Imperial arrived at the Costellos' home to make repairs on November 26, 2010. Before Imperial began work, Costello signed a "Work Authorization" contract authorizing

2

Imperial to make repairs to the Costellos' home. Exhibit A. The Work Authorization

contained the following clauses:

> Customer understands that Contractor has no connection with customer's insurance company or its adjuster and that the customer alone agrees that customer is solely responsible for payment of the total cost, including contractor's fee for stated repairs.
>
> ***
>
> Final payment of the total cost is due to contractor upon completion of project. I (we), the customer(s) receive the check from the insurance company; I (we) hereby agree to promptly endorse said payment to [Imperial] for disbursement.
>
> Customer agrees that any payments not made in accordance with this agreement when due shall be considered delinquent after ten (10) days and agrees to pay interest thereon to contractor at 2% per month (or the maximum rate allowed by law) until contractor is paid in full. It is the intent of the parties signing the agreement that the contractor be a third party beneficiary of any and all insurance contracts covering this job.

Exhibit A.

The back of the Work Authorization also contained several terms and conditions, but

the agreement did not describe the proposed home improvements, completion dates,

contingencies, or price. Although Costello signed the document, he testified that he did not

read it, and that it was presented to him as merely an authorization to let Imperial into his

house to begin work.

On November 26, 2010, Imperial workers checked the water damage, removed a

section of the basement ceiling, set out two air movers and a dehumidifier, and sprayed mold

and mildew neutralizer. The next day, Imperial sent a crew to do a moisture check, which

entailed measuring indoor and outdoor temperatures and humidity. The parties had an

3

appointment scheduled for November 28, 2010, but neither of the Costellos were at the appointment. Imperial sent a crew to the Costellos' house for a final time on December 2, 2010, and determined that the house was dry.

Before Imperial removed its equipment, Costello signed a "Certificate of Satisfaction" stating that Imperial's repairs were fully completed to his absolute satisfaction as stated in the contractual agreement and that he authorized payment to be made, in full, directly to Imperial. Exhibit B. Costello testified that he did not read this document either. It was his understanding that, by signing the form, he was merely authorizing Imperial to remove its equipment.

The total charge for Imperial's work was $669.86. The Costellos' insurance company sent, and the Costellos received, a check for the money due to Imperial for its work. The Costellos cashed the check shortly before Christmas of 2010. After numerous attempts to collect from the Costellos, Imperial filed a small claims action on March 17, 2011, seeking the money for services it provided, plus interest, as well as court costs and attorney fees.

A small claims hearing was held on August 1, 2011. After receiving testimony from Imperial's owner and Costello, the trial court made the following statement from the bench to Costello:

> My perspective is you know how to read. You have an obligation under the law to read what you sign before you sign it because you're going to be responsible for what it says you agreed to do. It says you agree to pay them money. It says you're satisfied with the work that was done…You got the money for the work that was done.

Tr. 49-50.

4

The trial court then made the following statement to Imperial:

> You're responsible for[,] uh[,] providing a contract that implies [sic] with Indiana State law regardless whether you knew about it or not. Uh[,] my understanding of Indiana law is if there is no contract up front that specifies what's going to be charged then a reasonable fee is determined by a fact finder is [sic] what you're entitled to. I'm the fact finder…Now I will give your attorney five minutes if you want to present some evidence to me as to[,] um[,] how this is reasonable since there wasn't an agreement up front. Uh[,] then I will make a ruling as to what's reasonable.

Tr. 50.

The trial court adjourned the hearing without issuing an order and offered the parties the opportunity to submit briefs on the applicability of the Indiana Home Improvement Contracts Act (HICA). After both parties submitted briefs, the court issued an order on August 30, 2011 granting judgment for Costello.

Imperial now appeals.

**Discussion and Decision**

Standard of Review

"Our standard of review is particularly deferential in small claims actions, where 'the trial shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.'" Mayflower Transit, Inc. v. Davenport, 714 N.E.2d 794, 797 (Ind. Ct. App. 1999) (quoting Ind. Small Claims Rule 8(A)). Imperial had the burden of proof at trial on its small claims action, and accordingly we apply a negative judgment standard of review. LTL Truck Service, LLC v. Safeguard, Inc., 817 N.E.2d 664, 667 (Ind. Ct. App. 2004). On appeal, we will not reverse a negative judgment unless it is contrary to law. Id. To determine whether a judgment is contrary to law, we

5

consider the "'evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom.'" Id. (quoting Hinojosa v. Board of Public Works & Safety for Hammond, Ind., 789 N.E.2d 533, 542 (Ind. Ct. App. 2003)).

We also observe that Costello has not filed an appellee's brief. When the appellee has failed to submit a brief we need not undertake the burden of developing arguments on the appellee's behalf. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. Id. Prima facie error in this context is defined as "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Santana v. Santana, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)). Where the appellant is unable to meet this burden, we will affirm. Id.

Home Improvement Contracts Act

Crucial to resolving Imperial's appeal is the application of the Indiana HICA,[1] the purpose of which

> is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts…[because] few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with well-known abuses found in the home improvement industry, served as an impetus for the passage of [HICA], and contractors are therefore held to a strict standard.

Hayes v. Chapman, 894 N.E.2d 1047, 1052 (Ind. Ct. App. 2008) (quoting Benge v. Miller, 855 N.E.2d 716, 720 (Ind. Ct. App. 2006)), trans. denied.

---

[1] One of the terms of the Work Authorization is that Kentucky law governs the contract and that its terms will be enforced pursuant to Kentucky law. However, neither party raised a choice of law issue for the trial court, and Imperial makes no such argument on appeal and cites exclusively to Indiana authority in its brief. We therefore surmise that the parties agree that Indiana law governs their contract and resolve Imperial's appeal accordingly.

HICA therefore requires home improvement suppliers[2] performing any alteration, repair, or modification to the residential property of a consumer[3] for an amount greater than $150 to provide the consumer with a written home improvement contract. I.C. §§ 24-5-11-1, -3, -4, -10(a); Homer v. Burman, 743 N.E.2d 1144, 1148 (Ind. Ct. App. 2001). The home improvement contract must contain certain information before it is signed by the consumer. I.C. § 24-5-11-10(a). When a home improvement contract is entered into as a result of damage, loss, or expense that is covered by the proceeds of an insurance policy, certain other specifications must be included in contracts. I.C. §§ 24-5-11-10(c)(1)-(4). A consumer may elect, in writing, to authorize the commencement of work covered by insurance before receiving complete specifications, but the consumer will only be obligated for the home improvements specified and agreed to by the insurance carrier. I.C. § 24-5-11-10(c)(5).

Imperial does not argue that its contract complied with HICA and instead concedes that its contract was non-conforming. A home improvement supplier that violates the HICA commits a "deceptive act" that is actionable by the attorney general or the consumer and subject to the remedies and penalties available to victims of deceptive consumer sales under the Indiana Deceptive Consumer Sales Act (DCSA). I.C. § 24-5-11-14. Specifically, "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred

---

[2] A "home improvement supplier" is a "person who engages in or solicits home improvement contracts[.]" I.C. § 24-5-11-6. Imperial does not dispute on appeal that it is a home improvement supplier subject to HICA.

[3] A "consumer" means an individual who owns, leases, or rents the residential property that is the subject of a home improvement contract. I.C. § 24-5-11-2. Imperial does not dispute that Costello is a consumer.

dollars ($500), whichever is greater."[4]  I.C. § 24-5-0.5-4(a).   Also, "the court may void or limit the application of contracts or clauses resulting from deceptive acts and order restitution to be paid to aggrieved customers."  I.C. § 24-5-0.5-4(d).

Here, Costello did not initiate an action based on Imperial's deceptive act, and did not file a counterclaim against Imperial.  Instead, Costello asserted the contract's non-compliance with HICA as a defense to Imperial's breach of contract claim, arguing that the contract is unenforceable against him.  Imperial contends that the contract's non-compliance does not, by itself, justify declaring the contract unenforceable.  Rather, according to Imperial, if Costello wanted to void the contract, he was required to assert a counterclaim to pursue that remedy.

As a general matter, contracts made in violation of a statute are void.  Johnson v. Anderson, 590 N.E.2d 1146, 1149 (Ind. Ct. App. 1992).  However, "because we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof."  Continental Basketball Ass'n v. Ellenstein Enterprises, Inc., 669 N.E.2d 134, 140 (Ind. 1996).  The Indiana General Assembly has made clear and unambiguous its intent that certain types of contracts not be enforced by declaring them "void" or "unenforceable."  Id.

HICA specifies certain minimum requirements that must be included in home

---

[4] An "uncured deceptive act" means a deceptive act of which the consumer gave proper notice to the supplier and either the supplier made no offer to cure within thirty (30) days, or the act has not been cured within a reasonable time after the consumer's acceptance of the offer to cure.  I.C. § 24-5-0.5-2(a)(7).  An "incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead.  I.C. § 24-5-0.5-2(a)(8).

improvement contracts in order to protect consumers. It is silent, however, as to whether contracts that do not meet the requirements are void or unenforceable, although it does provide that modifications are unenforceable against the consumer if not in writing and signed by the consumer. I.C. § 24-5-11-10(d). Instead, HICA declares a non-conforming contract to be a deceptive act and affords the aggrieved consumer the remedies available to victims of deceptive consumer sales under the DCSA. I.C. § 24-5-11-14. Under the DCSA, however, a contract that violates the statute and is a deceptive act is not necessarily void; rather, it creates a cause of action for which one of the remedies is to declare the contract void. Johnson, 590 N.E.2d at 1149.

We must therefore conclude from both our opinion in Johnson and the legislature's failure to use words like "void" or "unenforceable" in HICA to describe contracts made in violation thereof, as well as the inclusion of remedial provisions to be invoked in the event of a violation, one of which is voiding the contract, that the General Assembly did not intend that every contract made in violation of HICA to automatically be void. See Continental Basketball Ass'n, 669 N.E.2d at 140 (concluding that a contract made in violation of the Indiana Franchise Acts was not automatically void because the legislature did not use the terms "void" or "unenforceable" in the statute and included a remedial provision for violations). Instead, we apply a balancing approach and examine the factors that courts use to determine whether or not a contract contravenes declared public policy. Id.; also Ahuja v. Lynco Ltd. Med. Research, 675 N.E.2d 704, 708 (Ind. Ct. App. 1996), trans. denied. The considerations to be balanced are (1) the nature of the subject matter of the contract, (2) the

9

strength of the public policy underlying the statute, (3) the likelihood that refusal to enforce the bargain or term with further that policy, (4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain, and (5) the parties' relative bargaining power and freedom to contract. Id. (citing Fresh Cut, Inc. v. Fazli, 650 N.E.2d 1126, 1130 (Ind. 1995)).

The nature and subject matter of the contract at issue here is home improvement. As such, it is governed by HICA, a law enacted to protect consumers by requiring home improvement suppliers to provide detailed information in home improvement contracts. Costello, with only a ninth grade education, was in an inferior bargaining position with Imperial, an experienced home improvement company.

Nevertheless, we cannot conclude that the contract should be unenforceable against Costello. If we were to so hold, Imperial would suffer both a serious and undeserved forfeiture outweighing the other factors. Imperial provided services to Costello at Costello's request. Costello signed a certificate of satisfaction after Imperial finished its work, and did not testify at the hearing that Imperial failed to perform under the contract. Instead, Costello's explanation for not paying Imperial was that he thought the insurance company would pay for Imperial's services. The insurance company has paid for Imperial's services by sending a check to the Costellos, who cashed the check instead of paying Imperial, even though Costello agreed that Imperial was a third party beneficiary to any insurance contract covering the repairs.

Refusing to enforce the contract, moreover, would do little to further the policy behind

10

HICA. Despite any deficiencies in the contract or disparities in the parties' relative bargaining power, Costello ultimately received the benefit of Imperial's services as well as a check to cover its fees. He does not, therefore, need the protections of HICA, and has instead received a windfall, which the law disfavors. Crider & Crider, Inc. v. Downen, 873 N.E.2d 1115, 1119 (Ind. Ct. App. 2007). Under the circumstances of this case, we cannot conclude that the parties' agreement should be unenforceable against Costello.

**Conclusion**

Although Imperial provided a contract to Costello that it concedes did not satisfy requirements of HICA, that non-compliance did not automatically render the contract void. Instead, the issue required examination of several factors to determine whether the contract should be enforced. After examining those factors, we conclude that the contract is enforceable and should not be voided. Imperial has thus demonstrated prima facie error in the trial court's judgment. It is reversed and remanded with instructions to enter judgment in favor of Imperial for $669.86 and to hold a hearing to determine the contractual interest due on the contract and whether attorney fees or other costs are warranted and, if so, in what amount.

Reversed and remanded.

BAKER, J., and DARDEN, J., concur.