**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 31 2014, 8:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEREMY L. REIDY**
**MICHAEL S. GALLO**
Barnes & Thornburg, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY G. RAFF**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL J. BERMES,                              )
                                                )
    Appellant-Defendant,                      )
                                                )
      vs.                                   )    No. 35A02-1308-PL-694
                                                )
G. K. CAMBRAY & COMPANY, INC.,                  )
GREGORY K. CAMBRAY d/b/a CAMBRAY &              )
ASSOCIATES, INC., and LAURI MASSOTH,            )
                                                )
    Appellees-Plaintiffs.                     )

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas Hakes, Judge
Cause No. 35C01-1209-PL-819

**March 31, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Michael J. Bermes (Bermes), appeals the trial court's judgment in favor of Appellees-Plaintiffs, G.K. Cambray & Company, Inc. (G.K. Cambray), Gregory K. Cambray d/b/a Cambray & Associates, Inc.,[1] and Lauri Massoth (Massoth).

We affirm.

## ISSUES

Bermes raises three issues on appeal, two of which we find dispositive and restate as the following:

(1) Whether the trial court erred in determining that G.K. Cambray held a valid mechanic's lien (Mechanic's Lien) against Bermes; and

(2) Whether the trial court erred in concluding that G.K. Cambray did not commit a deceptive act because the agreement between G.K. Cambray and Bermes is not governed by the Indiana Home Improvement Contracts Act (the HICA).

## FACTS AND PROCEDURAL HISTORY

In early 2011, Bermes began constructing a new home for his family in Andrews, Indiana. Throughout the building process, Bermes acted as his own general contractor. When the house was near completion, Bermes' drywall subcontractor referred Bermes to G.K. Cambray, an Indiana corporation that sells and installs carpet and other types of

---

[1] Bermes dismissed his counterclaim against Gregory K. Cambray at trial; thus, Cambray is not a party to this appeal.

flooring. On Labor Day of 2011, Bermes went to G.K. Cambray's office showroom in Fort Wayne. A sign on the building's exterior identified the business as "Cambray & Associates." (Appellant's App. p. 61). Massoth, an employee of G.K. Cambray, consulted with Bermes regarding the various materials, installation, and design services Bermes would need for his new home.

On October 17, 2011, based on Bermes' flooring and tile selections, Massoth submitted a written proposal of the materials and the cost estimate to Bermes, which provided that G.K. Cambray would furnish the carpet, the hardwood flooring, and the tile for a total cost of $24,702. The proposal included the cost of carpet installation. In order to reduce Bermes' expenses, Massoth recommended a subcontractor, John Clendenen (Clendenen), to complete the "hard surface labor." (Appellant's App. p. 88). The parties agreed that Massoth would coordinate the paperwork and scheduling with Clendenen, but Bermes would contract directly with Clendenen for his installation services. On November 9, 2011, Bermes signed the proposal. Following Bermes' approval, Massoth ordered the necessary materials and scheduled the installation.

By approximately February 1, 2012, G.K. Cambray had installed the carpet and had delivered the tile for Clendenen to install. On February 6, 2012, G.K. Cambray sent an invoice to Bermes for $24,701.77. Soon thereafter, Bermes requested that G.K. Cambray also install carpet in the lower level of his home. G.K. Cambray completed the additional work and sent Bermes an invoice on February 28, 2012 for $3,788.37.

At the end of February 2012, Bermes moved into his newly constructed home. Around that same time, Clendenen completed the tile installation and sent a final invoice

3

to Bermes for $3,057.30. Bermes was dissatisfied with the quality of Clendenen's work, and he contacted Massoth to request her assistance in resolving the issue. On March 6, 2012, Bermes met with Massoth and Clendenen at G.K. Cambray's office. To settle the dispute, Clendenen agreed to reduce the amount owed to $2400, which Bermes then paid, and Clendenen signed a lien waiver in Bermes' favor. After the meeting, Massoth requested that Bermes remit a payment on his outstanding invoices; Bermes wrote a check to G.K. Cambray for $15,000.

Also at this time, Massoth and Bermes discussed an issue regarding Bermes' tile order. Bermes had requested that Massoth eliminate some backsplash tile from the design, and, in so doing, Massoth had also mistakenly eliminated the decorative shower tile from the proposal. To remedy this error, Massoth agreed that if Bermes would pay for the cost of the decorative shower tile, she would not charge a labor fee for its installation. Massoth commissioned another subcontractor, Carl Neuhaus (Neuhaus), to install the omitted decorative shower tile. During a meeting with Massoth and Neuhaus at his house, Bermes requested that Neuhaus make several corrections to Clendenen's "substandard work" as well. (Transcript p. 84). A few months later, Bermes informed Massoth that the corrective work was complete.

On July 9, 2012, G.K. Cambray sent Bermes an account statement reflecting a balance of $13,490.14. The following week, on July 16, 2012, G.K. Cambray invoiced Bermes for $3,060.34 for the additional repair work completed by Neuhaus. When Bermes received the statement, which indicated that his payment was past due, he contacted G.K. Cambray and requested that Massoth adjust the invoice to reflect a credit of $650 "for the

4

removal of the [glass] doors that was required for [Neuhaus] to do the work on the tile" and to delete the past due notation. (Tr. p. 90). Because Bermes did not receive a revised invoice, he never paid G.K. Cambray the remaining balance of $16,550.48.

On August 1, 2012, G.K. Cambray filed a Sworn Statement of Intention to Hold a Lien (Lien Notice) with the Huntington County Recorder. The Lien Notice provided that G.K. Cambray intended to hold a mechanic's lien against Bermes' real property, including "all buildings, other structures and improvements on it or connected with it[,]" for $16,550.48 owed for "labor and material for carpet and tile installation." (Appellant's App. p. 13). In response, on August 6, 2012, Bermes served G.K. Cambray with a Notice of Deceptive Act, alleging that G.K. Cambray had violated the HICA.

On September 25, 2012, G.K. Cambray filed a Complaint with the trial court, seeking to foreclose on the Mechanic's Lien and requesting that Bermes' property be sold to satisfy the unpaid invoices. On November 21, 2012, Bermes counterclaimed, alleging that G.K. Cambray had engaged in poor workmanship and deceptive conduct. Namely, Bermes averred that G.K. Cambray had failed to provide him with a written contract pursuant to the HICA and that Massoth had misrepresented the name of the company. In addition, Bermes asserted a claim for slander of title and sought a declaratory judgment regarding whether G.K. Cambray was entitled to a Mechanic's Lien on Bermes' property.

On November 29, 2012, G.K. Cambray filed a motion to dismiss Bermes' counterclaim for failure to state a claim under Indiana Trial rule 12(B)(6). Specifically, G.K. Cambray asserted that Bermes was not entitled to relief because he filed his counterclaim against Gregory K. Cambray d/b/a Cambray & Associates, Inc., who was not

5

an opposing party. On November 30, 2012, Bermes filed a motion for summary judgment. According to Bermes, "[t]he undisputed facts show that there was no written contract[,]" and G.K. Cambray was "not the party that performed labor or services at the real estate." (Appellant's App. pp. 36-37). Following a hearing on February 19, 2013, the trial court denied Bermes' motion for summary judgment. On April 5, 2013, Bermes filed a motion to strike G.K. Cambray's motion to dismiss his counterclaim and requested that the trial court enter default judgment in his favor. On April 25, 2013, the trial court denied Bermes' motions to strike and for default judgment but granted Bermes permission to amend his counterclaim.

On May 21, 2013, the trial court conducted a bench trial. On July 16, 2013, the trial court entered judgment in G.K. Cambray's favor. The trial court issued specific findings of fact and conclusions of law and ordered Bermes to pay G.K. Cambray $16,550.48, plus attorney's fees and prejudgment interest for a total of $23,032. Additionally, the trial court concluded that G.K. Cambray held a valid Mechanic's Lien, which the trial court ordered to be foreclosed and that Bermes' real estate be sold at a sheriff's sale to satisfy the judgment.

Bermes now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

When a trial court enters specific findings of fact and conclusions of law, our court will uphold the trial court's judgment unless it is clearly erroneous. *Mullis v. Brennan*, 716 N.E.2d 58, 62 (Ind. Ct. App. 1999). On review, we will find clear error if the evidence

fails to support the trial court's factual findings or if those findings do not support the judgment. *Id.* We will consider only the evidence, along with any reasonable inferences derived therefrom, most favorable to the trial court's judgment. *Id.* We will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

## II. *Mechanic's Lien Statute*

Bermes initially claims that the trial court erred because G.K. Cambray did not hold a valid Mechanic's Lien. The Mechanic's Lien Statute provides that any contractor or other person who performs labor or furnishes the materials or equipment for "the erection, alteration, repair, or removal of" a house, if uncompensated, may obtain a lien on the building or real property "to the extent of the value of any labor done or the material furnished." Ind. Code § 32-28-3-1(a)-(b). In order to procure a mechanic's lien, a party must file a sworn "statement and notice of intention to hold a lien" specifying the amount claimed, the name and address of the claimant, the name and address of the property owner, and a legal description of the real property. I.C. § 32-28-3-3(c).

Mechanic's liens are a statutory creation in derogation of the common law. *Ford v. Culp Custom Homes, Inc.*, 731 N.E.2d 468, 472 (Ind. Ct. App. 2000), *trans. denied.* Accordingly, we must strictly construe the statutory provisions. *Id.* Bermes contends that G.K. Cambray's Lien Notice contravenes the statute because it misidentifies the claimant, overstates the amount owed, and is grounded in void contracts.

## A. *Named Claimant*

First, Bermes asserts that the Mechanic's Lien is invalid because the Lien Notice identifies the claimant as "GK Cambray & Company, Inc." (Appellant's App. p. 13).

7

Specifically, Bermes argues that he contracted with Cambray & Associates, and G.K. Cambray failed to prove "that Bermes knew that [G.K. Cambray] and 'Cambray & Associates, Inc.' were the same entity." (Appellant's Br. p. 21). Strict adherence to the Mechanic's Lien Statute requires that a lien notice set forth "the name and address of the claimant." I.C. § 32-28-3-3(c)(2). In general, "[h]ypertechnicalities should not be used to frustrate the remedial purpose of mechanic's liens." *Logansport Equipment Rental, Inc. v. Transco, Inc.*, 755 N.E.2d 1135, 1137 (Ind. Ct. App. 2001). It is also well-settled that, to be entitled to a mechanic's lien, the named claimant must have personally performed the work or furnished the materials. *Ford*, 731 N.E.2d at 475.

The Mechanic's Lien Statute provides that it is sufficient for strict adherence if the *owner's* name and the legal description of the property are "substantially as set forth in the latest entry in the transfer books . . . ." I.C. § 32-28-3-3(c). Likewise, our court has previously determined that the substantial compliance standard equally applies with respect to the *claimant's* name and address. *See Von Tobel Corp. v. Chi-Tec Const. & Remodeling, Inc.*, 994 N.E.2d 1215, 1218-19 (Ind. Ct. App. 2013), *reh'g denied*. In assessing

> [w]hether there has been substantial compliance by the lien claimant depends upon the degree of non-compliance with the letter of the statute, the policy which underlies the particular statutory provision in question, and the prejudice which may have resulted to either the owner of the property or other third parties who have an interest in the real estate.

*Logansport Equipment Rental, Inc.*, 755 N.E.2d at 1137. The policy objectives of filing a lien notice are twofold: "(1) to provide the record titleholder of the property with notice that a mechanic's lien has been placed upon the real estate; and (2) to put third party purchasers and money lenders on notice of the same fact." *Id.*

Bermes maintains that "[i]t was [G.K. Cambray's] sole obligation to strictly follow the provisions of the Mechanic's Lien Statute and it failed to do so" by designating the wrong lien claimant, which exceeds a mere "hypertechnicality." (Appellant's Br. pp. 19, 22). The record in this case reflects, and G.K. Cambray does not dispute, that Massoth referred to G.K. Cambray as Cambray & Associates, the sign on the building's exterior denotes the business as Cambray & Associates, and the letterhead on the signed project proposal says Cambray & Associates. However, the trial court found "no evidence that [G.K.] Cambray's use of abbreviated business names was part of a scheme, artifice, or device intended to defraud or mislead Bermes or that Bermes was defrauded or misle[]d." (Appellant's App. p. 9). During the trial, Massoth testified that G.K. & Cambray has conducted business using the "shortened form of the company name" simply for marketing purposes and convenience. (Tr. p. 56). As Massoth explained, every product order entails "a long process . . . [s]o to simplify it[,] it's always easier to keep [the company's name] a little shorter." (Tr. p. 11).

In insisting that he did not authorize G.K. Cambray to perform any work in his house, Bermes relies on *Mullis*, 716 N.E.2d at 61, where, following an agreement to build a room addition, the homeowner became dissatisfied with the contractor's work and withheld further payments until the contractor remedied the problems. In response, the contractor left the project unfinished. *Id.* The contractor, under the name of his corporation—MBC—as the claimant, filed a mechanic's lien against the homeowner's property. *Id.* at 61-62. Our court held the mechanic's lien was invalid because the contractor, not MBC, had contracted with the homeowner and "acknowledged at trial that

9

the contract was not signed by him 'for and on behalf of' MBC." *Id.* at 63. The contract made no reference to MBC, and the homeowner made all payments to the contractor rather than MBC, which were deposited into the contractor's personal bank account. *Id.*

We find that the case at hand is distinct. Unlike in *Mullis*, where the individual contractor and his company were two distinct entities, Cambray & Associates is not a legal entity apart from G.K. Cambray. Bermes unsuccessfully attempts to convince this court that, "[e]ven if [G.K. Cambray] and 'Cambray & Associates, Inc.' were indeed the same entity, [Massoth] held them out to the consuming public as distinct corporations." (Appellant's Reply Br. p. 3). We, however, find little merit in Bermes' assertion that he understood his dealings to be solely with Cambray & Associates.

The evidence establishes that Bermes was not at all prejudiced by the Lien Notice because Bermes clearly knew that he "owed money to . . . what I came to understand was [G.K. Cambray]." (Tr. pp. 93-94). Bermes does not dispute that he did, in fact, obtain the benefit of the materials and services detailed in the Lien Notice. *See Ford*, 731 N.E.2d at 472 ("[T]he core function of mechanic's lien laws is to prevent the inequity of a property owner enjoying the benefits of the labor and materials furnished by others without recompense."). Moreover, Bermes received invoices from the named claimant totaling the amount specified in the Lien Notice, made a partial payment to the named claimant, and discussed his carpet and tile selections with Massoth at the address identified in the Lien Notice. Accordingly, we find G.K. Cambray complied with the Mechanic's Lien Statute by naming the proper claimant.

B. *Amount Owed*

10

Second, Bermes contends that, notwithstanding a failure to list the proper claimant, the Mechanic's Lien is invalid because it overstates the amount Bermes owes to G.K. Cambray. In the Lien Notice, G.K. Cambray claimed it was entitled to $16,550.48. According to Bermes, "where the lien claimant has intentionally or through culpable negligence overstated the amount due, such overstatement will render the whole lien void." (Appellant's Br. p. 24 (citing *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 100-01 (Ind. Ct. App. 1999), *trans. denied*)). On the other hand, as our supreme court decided long ago, "[a] mistake of that character, which has not operated to the prejudice of any[]one, will not defeat a lien." *Albrecht v. C.C. Foster Lumber Co.*, 26 N.E. 157, 157 (Ind. 1890).

The trial court specifically found that "Bermes is indebted to G.K. Cambray [] in the sum of $16,550.48." (Appellant's App. p. 9). Despite challenging this amount, Bermes fails to present a cogent argument regarding how or to what extent G.K. Cambray inflated the total balance.[2] We infer from the transcript that Bermes' may be referring to a $650 discrepancy. During the trial, Bermes asserted he was entitled to a $650 credit against his balance because he paid the glass company directly to remove and reinstall the glass shower doors. Apparently, the shower door removal was necessary in order for Neuhaus to install the decorative shower tile that Massoth had erroneously eliminated from the

---

[2] Bermes states that "[n]either the [trial] [c]ourt nor [G.K. Cambray] can explain why the invoice that [G.K. Cambray] identified as the 'final invoice' was for the amount of $13,490.14 while the [M]echanic's [L]ien was filed for the amount of $16,550.48." (Appellant's Reply Br. p. 4). On July 9, 2012, G.K. Cambray provided Bermes with a statement indicating his account balance was $13,490.14, but we note that neither this statement nor any of G.K. Cambray's invoices are labeled as "final." Rather, on February 24, 2012, *Clendenen* submitted his "FINAL INVOICE" to Bermes. (Appellant's App. p. 92).

11

design. The evidence reveals that G.K. Cambray charged Bermes for the tile, but the "installation of decorative accents on exterior of shower wall" was completed "at no charge." (Appellant's App. p. 94). Conversely, Bermes tendered no evidence to verify that he spent $650 as a result of Massoth's error to warrant a credit.

The record discloses that G.K. Cambray submitted three separate invoices to Bermes for a combined total of $31,550.48. The invoices reflect the charges for the flooring materials and carpet installation detailed in the approved project proposal, as well as for the lower level carpet installation and the miscellaneous repair work that Bermes requested. Deducting Bermes' $15,000 payment from the total invoiced amount, we find that the trial court correctly determined that Bermes' outstanding balance totals $16,550.48. We accordingly conclude that G.K. Cambray's Mechanic's Lien is valid.[3]

### III. *Home Improvement Contracts Act*

### A. *Requirements of the HICA*

Next, Bermes claims that the trial court erred in determining that G.K. Cambray did not commit a deceptive act because the HICA does not govern the agreement between G.K. Cambray and Bermes. The HICA governs home improvement contracts that involve "any alteration, repair, replacement, reconstruction, or other modification of residential property" in an amount greater than $150. I.C. §§ 24-5-11-3 to -4. The purpose of the HICA is to protect consumers from "the well-known abuses found in the home improvement industry." *Mullis*, 716 N.E.2d at 65. Because consumers are often

---

[3] For the reasons discussed below, we do not address Bermes' third contention that the Mechanic's Lien is invalid because the underlying contracts are void under the HICA.

unknowledgeable about the building process and construction techniques, they are beholden to the contractors' expertise and trustworthiness. *Id.*

Pursuant to its purpose, the HICA stipulates that a "home improvement supplier"—that is, the contracting company—must provide the customer with a home improvement contract specifying, in part, the name of the customer and address of the real property that will receive the improvements, the company's name and contact information, a "reasonably detailed description of the proposed home improvements[,]" the approximate start and completion dates, "any contingencies that would materially change the approximate completion date[,]" and the contract price. I.C. § 24-5-11-10(a). The contract must include signature lines for both the company and the customer. I.C. § 24-5-11-10(a)(9). "A home improvement supplier who violates [the HICA] commits a deceptive act that is actionable by the attorney general or by a consumer under [the Deceptive Consumer Sales Act]" [the DCSA]. I.C. § 24-5-11-14. *See* I.C. Ch. 24-5-0.5.

B. *Violation of the HICA*

Bermes views his business dealings with G.K. Cambray as four separate contracts, each of which he maintains is void due to G.K. Cambray's failure to comply with the HICA. If a home improvement supplier fails to provide a contract, or provides a non-conforming contract, it is considered "to be a deceptive act and affords the aggrieved consumer the remedies available to victims . . . under the DCSA." *Imperial Ins. Restoration & Remodeling, Inc. v. Costello*, 965 N.E.2d 723, 729 (Ind. Ct. App. 2012). A violation of the HICA, although considered a deceptive act, does not automatically render the contract void; "rather, it creates a cause of action for which one of the remedies is to

13

declare the contract void." *Id.* "[T]o establish entitlement to those remedies, the consumer must show that the deceptive act was either uncured—meaning that notice was given and the deceptive act was not cured—or incurable—meaning that the supplier acted with an intent to defraud or mislead the consumer." *Hayes v. Chapman*, 894 N.E.2d 1047, 1053 (Ind. Ct. App. 2008) (citing I.C. § 24-5-0.5-4(a)).

Here, Bermes filed a Notice of Deceptive Act in which he alleged that G.K. Cambray failed "to provide a written contract to [Bermes] or to have amendments to such contract in writing and signed by both parties . . . for certain improvements to [Bermes]' residence." (Appellant's App. p. 76). The record demonstrates that Massoth provided Bermes with a project proposal, which included Bermes' name and address, G.K. Cambray's contact information; a detailed description of the flooring materials, their quantities and itemized prices, and their intended placement in the house; a total cost estimate; and an explanation that the price included the carpet installation. Bermes signed the proposal on November 9, 2011. In contrast to the statutory requirements, the proposal did not detail the start and end dates for the project, did not provide any contingencies that would materially change the projected completion date, nor was it signed by a representative of G.K. Cambray. We have previously noted that certain incidents of non-compliance, standing alone, are insufficient to constitute a deceptive act "because no prejudice resulted therefrom." *Mullis*, 716 N.E.2d at 65. In this case, it is undisputed that there were no written agreements concerning Bermes' request that G.K. Cambray order and install carpet for the lower level of his house, G.K. Cambray's promise to install the

overlooked decorative shower tile free of labor charges, or Bermes' request that Neuhaus remediate Clendenen's shoddy work.

Despite G.K. Cambray's seeming failure to comply with the HICA, in its conclusions of law, the trial court determined that the HICA "does not apply because the project was new construction not a home improvement of an existing dwelling occupied by a consumer." (Appellant's App. p. 10). The HICA defines "residential property" as "real property that: (1) contains one (1) to four (4) dwelling units; and (2) is used in whole or in part as a dwelling of a consumer." I.C. § 24-5-11-7.5(a). During the trial, Bermes testified that he moved into the house at the end of February. Thus, with the exception of Neuhaus' decorative tile installation and repairs to Clendenen's work, G.K. Cambray completed the rest of the project prior to Bermes' occupancy.

We find that, notwithstanding whether the HICA governs the work that G.K. Cambray performed while Bermes was actually living in the residence, it would do nothing to serve the policy behind the HICA to find the contract(s) void. "If we were to so hold, [G.K. Cambray] would suffer both a serious and undeserved forfeiture." *Imperial Ins. Restoration & Remodeling, Inc.*, 965 N.E.2d at 729. The trial court found that "Bermes did not suffer any actual damages as a result of anything [G.K.] Cambray did or didn't do." (Appellant's App. p. 9). Additionally, we note that Bermes acted as his own general contractor and does not assert an inferior bargaining position to that of G.K. Cambray. *See Imperial Ins. Restoration & Remodeling, Inc.*, 965 N.E.2d at 729. It is well-established in Indiana that our laws do not look favorably upon windfalls. *Id.* at 729-30. G.K. Cambray fully performed its agreed-upon obligations by procuring the materials, installing the

carpet, and completing all of the additional work that Bermes specifically requested. Bermes, who conceded his satisfaction with G.K. Cambray's workmanship, now argues that he should be able to enjoy the brand new flooring and tile in his home without having to compensate G.K. Cambray. We agree with the trial court that "[i]f Bermes were to avoid paying [G.K.] Cambray[,] he would be unjustly enriched in the amount of $16,550.48." (Appellant's App. p. 9). Therefore, we conclude that G.K. Cambray is not liable for a deceptive act resulting from a HICA violation.[4]

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not err in determining that G.K. Cambray held a valid Mechanic's Lien against Bermes' real property; (2) G.K. Cambray did not commit a deceptive act by failing to comply with the HICA; and (3) Bermes is not entitled to hold Massoth personally liable.

Affirmed.

VAIDIK, C. J. and MAY, J. concur

---

[4] Because we conclude the agreement between G.K. Cambray and Bermes is enforceable, we need not address Bermes' final claim that the trial court erred in denying his counterclaim that Massoth should be held personally liable for the "*per se* deceptive acts arising from HICA violations." (Appellant's Br. p. 30).

16