

FILED

Oct 30 2020, 11:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert L. Burkart
Clifford R. Whitehead
L. Katherine Boren
Evansville, Indiana

ATTORNEY FOR APPELLEE

J. Herbert Davis
Evansville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Nathan Kluger and Laura
Kluger,

*Appellant-Plaintiff,*

v.

J.J.P. Enterprises, Inc. d/b/a/
SERVPRO of North Lexington

*Appellee-Defendant.*

October 30, 2020

Court of Appeals Case No.
20A-PL-235

Appeal from the Posey Circuit
Court

The Honorable Craig S. Goedde,
Judge

Trial Court Cause No.
65C01-1710-PL-371

**Altice, Judge.**

# Case Summary

[1] Nathan and Laura Kluger appeal the trial court's grant of partial summary judgment in favor of J.J.P. Enterprises, Inc. d/b/a Servpro of North Lexington (Servpro). The Klugers argue that the trial court erred in granting summary judgment for Servpro because the designated evidence established that the $150 threshold contract price for remediation and restoration to their residence pursuant to Indiana's Home Improvement Contracts Act (HICA)[1] had been satisfied and, therefore, Servpro may not escape liability for damages and penalties. Thus, the Klugers contend that partial summary judgment should have been entered in their favor.

[2] Reversed and remanded.

## Facts and Procedural History

[3] On February 28, 2017, a tornado tore the roof from the Klugers' Posey County residence that resulted in water damage to their home and personal property.[2] The next day, the Klugers filed a claim with their homeowner's insurance company, whereupon an adjuster referred them to Servpro, a company that provides residential and commercial cleanup and restoration services. As a result of the storm damage, the Klugers were forced to find temporary housing.

---

[1] Ind. Code § 24-5-11-1, et seq. The parties agree that the version of HICA at issue herein is that which was in effect on March 2017. Various nonsubstantive provisions of HICA were amended and became effective in July 2017.

[2] Although the house was titled in Nathan's name only, both he and Laura owned personal property in the home.

[4]     On March 2, a Servpro representative inspected the damage and photographed the interior of the home. Nathan was advised that Servpro would provide emergency services, including the placement of a temporary roof structure and tarp to cover the home's exposed interior that would prevent further water damage.

[5]     That same day, Servpro representative Landon Turner met Nathan at the residence and presented him with an electronic "Authorization to Perform Services and Direction of Payment" (the "Contract"). *Appellant's Appendix Vol. 3* at 71. Nathan electronically signed the Contract, which was a standard form that Servpro's corporate office provided. Turner directed Nathan where to sign on an iPad because the document was not visible in the sunlight. The Contract did not contain a detailed description of the services to be provided, estimated starting and completion dates of the work, a notice of cancellation, or the contract price. Because of Servpro's business policies, Turner lacked authority to provide the Klugers with an estimate for the cost of the services. Turner also did not provide the Klugers with a copy of the Contract.

[6]     While Servpro provided some cleanup services at the Klugers' residence, it failed to place a tarp on the roof before heavy rainfall occurred on March 6 and 7, 2017. Servpro did not provide any water extraction services to the residence or to the Klugers' personal property, and it was not until sometime on March 7 that a general contractor arrived at the Klugers' residence to cover the roof with a tarp.

[7] Although Servpro's standard practice is to send an invoice after the services are completed, it never sent a bill to the Klugers. A Servpro representative indicated that its sole reason for failing to invoice the Klugers was because the project had "slipped through the cracks." *Appellants' Appendix Vol.* 4 at 74-75.

[8] On October 11, 2017, the Klugers filed a complaint against Servpro, alleging that it had failed to perform the cleanup and restoration services in a timely and proper manner. The Klugers claimed that Servpro's failure to place a tarp on their roof before the heavy rains resulted in water damage to their residence and its contents. As a result, the Klugers alleged that their home and personal property were not "salvageable" because of the extensive "structural damage" that had resulted. *Appellant's Appendix Vol. 2* at 19. The Klugers further maintained that Servpro violated the provisions of HICA because it failed to provide them with a fully executed written contract setting forth a description of the proposed work and improvements, the contract price, and the start and completion dates of the work. Servpro denied the allegations and asserted a counterclaim against the Klugers, claiming that they had breached the Contract for refusing to pay for the cleaning and restoration services it had provided. Servpro claimed that the Klugers owed them $8132.74 for the services provided, plus attorney's fees and costs.

[9] On June 5, 2018, the Klugers filed a motion for summary judgment claiming, among other things, that they were entitled to judgment as a matter of law because Servpro violated HICA for failing to provide them with an adequate

written contract. Servpro responded that HICA did not apply to "temporary or emergency services" and that HICA's $150 contract-price threshold was not satisfied because it never billed the Klugers for the work. *Id.* at 192-96.

[10] Following a hearing, the trial court denied the Klugers' motion for summary judgment as to their claims regarding assumption of duty, breach of an oral contract, and negligence. The court concluded that while HICA applied to the type of services that Servpro provided, the Klugers were not entitled to summary judgment because the "designated, undisputed facts do not support all of the elements of a cause of action under HICA." *Appellant's Appendix Vol. 3* at 23.

[11] Thereafter, the Klugers filed an amended complaint alleging that Servpro's violation of HICA gave rise to a claim under the Indiana Deceptive Consumer Sales Act (DCSA).[3] Specifically, the Klugers claimed that Servpro's HICA violations amounted to a "willful deceptive act" under DCSA and the Contract was therefore void and unenforceable. *Id.* Thus, the Klugers alleged that Servpro was barred from recovering compensation for any of the work it performed at the residence. The Klugers also asserted that they were entitled to treble damages, attorney's fees, interest, and costs of the action under DCSA. Finally, the amended complaint included an allegation that at the first summary judgment hearing, Servpro conceded that if HICA applied to the services it

---

[3] Ind. Code § 24-5-0.5-1, -10.

rendered, the Contract did not comply with the statutory requirements. Servpro admitted that allegation and did not reassert a counterclaim for payment for its services. *Id.* at 55-56.

[12] On August 15, 2019, the Klugers filed a motion for partial summary judgment as to liability on their HICA and DCSA claims. Servpro cross-claimed for partial summary judgment asserting that HICA did not apply in this instance because the $150 threshold price was not satisfied and it could not be liable under DCSA.

[13] On December 18, 2019, the trial court denied the Klugers' motion for partial summary judgment and granted partial summary judgment in Servpro's favor, concluding that HICA did not apply to the Klugers' claims because the $150 threshold contract amount had not been met. The trial court's order provided in relevant part that

> 11. I.C. § 24-5-11-5 defines 'home improvement contract price' as 'the amount actually charged for' . . . the work. Under its clear and plain meaning, Servpro did not actually charge the Klugers any sums for their work prior to this litigation.
>
> 12. Likewise, according to the Answer and Affirmative Defenses to the Amended Complaint, Servpro claims no damages due and owing from the Klugers.
>
> 13. The designated material does not substantiate that Servpro actually charged the Klugers more than $150 for the work performed.

14. Thus, HICA cannot apply to the contract.

15. As such, the Klugers' partial summary judgment motion on that issue must be denied.

16. Partial summary judgment, however, is appropriate for Servpro [regarding the Klugers' claim for the HICA violation] for the same reasons outlined above.

*Appellant's Appendix Vol. 2* at 13. We accepted this case for interlocutory appeal on February 26, 2020.

# Discussion and Decision

## I. Standard of Review

[14] Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid,* 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37 (Ind. 2002).

*A House Mechanics, Inc. v. Massey,* 124 N.E.3d 1257, 1262 (Ind. Ct. App. 2019) (quoting *Goodwin v. Yeakle's Sports Bar and Grill, Inc.,* 62 N.E.3d 384, 386 (Ind. 2016)). We may affirm an entry of summary judgment "if it can be sustained on any theory or basis in the record." *DiMaggio v. Rosario*, 52 N.E.3d 896, 904 (Ind. Ct. App. 2016), *trans. denied.*

[15] We further note that statutory interpretation presents a pure question of law for which summary judgment is particularly appropriate. *Sanders v. Bd. of Comm'rs,* 892 N.E.2d 1249, 1252 (Ind. Ct. App. 2008), *trans. denied.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Finally, the fact that the parties have filed cross-motions for summary judgment does not alter our standard of review or change our analysis: the party that lost in the trial court has the burden of persuading us that the trial court erred. *Denson v. Estate of Dillard,* 116 N.E.3d 535, 539 (Ind. Ct. App. 2018).

## II. HICA and DCSA

[16] The parties agree that the only issue before us is whether the Contract satisfied HICA's $150 contract price threshold. Hence, we first turn to the relevant principles of statutory construction. In *Anderson v. Gaudin,* our Supreme Court stated that

> [S]tatutory interpretation is a question of law that we review *de novo. . . .* In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and

unambiguous, we apply words and phrases in their plain, ordinary, and usual sense. When a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. When faced with an ambiguous statute, our primary goal is to determine, give effect to, and implement the intent of the Legislature with well-established rules of statutory construction. We examine the statute as a whole, reading its sections together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. . . .

42 N.E.3d 82, 85 (Ind. 2015) (some citations omitted).

[17] When examining the provisions of HICA, we initially observe that its purpose

is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts . . . [because] few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with well-known abuses found in the home improvement industry, served as an impetus for the passage of [HICA], and contractors are therefore held to a strict standard.

[18] *Imperial Ins. Restoration v. Costello,* 965 N.E.2d 723, 727 (Ind. Ct. App. 2012) (quoting *Hayes v. Chapman,* 894 N.E.2d 1047, 1052 (Ind. Ct. App. 2008), *trans. denied*))

[19] Under HICA, a "home improvement[4] contract" is defined as "an agreement, oral or written, between a home improvement supplier and a consumer to make a home improvement and for which the contract price exceeds . . . $150." I.C. § 24-5-11-4. The "home improvement contract price" is "the amount actually charged for the services, materials, and work to be performed under the . . . contract. . . ." I.C. § 24-5-11-5. HICA "requires home improvement suppliers performing any alteration, repair, or modification to the residential property of a consumer for an amount greater than $150 to provide the consumer with a written home improvement contract." *Imperial*, 965 N.E.2d at 727-28 (citing I.C. §§ 24-5-11-1, -3, -4, -10(a)).

[20] HICA further provides that the contract must contain certain information, including a) a reasonably detailed description of the proposed improvements; b) the approximate starting and completion dates of the improvements; c) a statement of any contingencies that would materially change the approximate completion date; and d) the contract price. I.C. § 24-5-11-10(a). HICA states that "[a] real property improvement supplier who violates this chapter commits a deceptive act" that is actionable under the DCSA and subject to the remedies and penalties set forth therein. I.C. § 24-5-11-14.

[21] Along with HICA, DCSA's purposes are to

---

[4] The current version of HICA uses the terms "real property improvement supplier" rather than "home improvement" supplier.

(1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2) protect consumers from suppliers who commit deceptive and unconscionable sales acts;

and (3) encourage the development of fair consumer sales practices.

I.C. § 24-5-0.5-1(b); *McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998). In accordance with DCSA, a supplier "may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" and that such conduct "is a violation of [DCSA] whether it occurs before, during, or after the transaction. I.C. § 24-5-0.5-3(a). A consumer may bring an action under DCSA to recover actual damages and, when the act is willful, the trial court may also award treble damages or a $1000 penalty, whichever is greater, along with attorney's fees. IC. § 24-5-0.5-4.

[22]   In this case, the trial court concluded that the $150 contract price threshold under HICA was not satisfied because Servpro did not invoice the Klugers for the work and, therefore, never charged them for its services. The trial court relied on the fact that Servpro withdrew its previously asserted counterclaim against the Klugers in the amount of $8132.74 that represented the value of the work it performed under the Contract.

[23]   While this court has not previously addressed the definition of "contract price" under HICA, Servpro and the trial court interpret those terms to mean the

amount of the invoice, if any, that is sent by the supplier *after* the work is completed. In our view, the HICA provisions do not support such an interpretation. More specifically, I.C. §24-5-11-10 (a)(B)(4) and (5) under HICA provide that there must be a "reasonably detailed description of the *proposed* home improvements," and "if the description . . . does not include the specifications for the home improvement, . . . the specifications will be provided to the consumer *before commencing any work.* . . ." The "to be performed" language certainly contemplates an agreed-upon contract price prior to the commencement of the work, i.e., at the time the contract is executed. Moreover, as explained above, HICA directs the "improvement supplier" to provide the consumer with a conforming written contract before commencing work, and the contract *must* include certain information, including the contract price, before the consumer signs. I. C. § 24-5-11-10(a)(8).

[24] When the HICA provisions are read and construed together, it is readily apparent that a contract price must be provided to the consumer and agreed to by the consumer before work begins on the project. *See Sanders*, 892 N.E.2d at 1252 (to determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute). Thus, a HICA violation occurs upon the presentation and execution of a nonconforming real property improvement contract and commencement of the contracted work, both of which typically occur well before the consumer is invoiced for the work. In short, the price of the work was required in the Contract between Servpro and the Klugers.

[25]     We further note that Servpro initially intended to charge the Klugers for its services, as shown by the advancement of its counterclaim against the Klugers for $8132.74. The value of those contemplated services—cleanup, restoration, and placement of the tarp on the roof—far exceeded HICA's $150 threshold. While Servpro omitted a price from the Contract and did not send the Klugers an invoice after the work was completed, its responsibilities under HICA are not excused merely because it inadvertently failed to bill the Klugers for the work.

[26]     Likewise, principles of judicial estoppel preclude Servpro from initially asserting that the Klugers breached the Contract by failing to pay for services and thereafter asserting that nothing is owed. *See Ellis v. Keystone Constr. Corp.,* 82 N.E.3d 920, 924 (Ind. Ct. App. 2017) (observing that judicial estoppel seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding), *trans. denied*; *see also PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 957 (Ind. 2005) (holding that while a party may properly plead alternative and contradictory theories, judicial estoppel precludes a party from repudiating assertions in the party's own pleadings).

[27]     In sum, to construe HICA's contract price requirements as the trial court did, would lead to unjust results and not hold improvement industry contractors accountable to consumers. HICA was enacted in response to deceptive practices that were occurring in the home improvement industry. *See Imperial*, 965 N.E.2d at 727. Because Servpro had already violated HICA when it commenced work, it cannot evade potential liability by simply withdrawing its

demand for payment during litigation. To do so would undermine HICA's broad remedial and deterrent purposes.

[28] For all these reasons, we conclude that HICA'S $150 contract-price threshold has been satisfied as a matter of law in this instance, and the trial court erred in granting Servpro's motion for partial summary judgment. Thus, the grant of partial summary judgment for Servpro is reversed and we remand this cause with instructions that the trial court enter partial summary judgment in the Klugers' favor and to conduct further proceedings consistent with this opinion.

[29] Reversed and remanded.

Riley, J. and May, J., concur.