**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**JOHN THRASHER**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**PAUL J. CARROLL**
Mercer Belanger, P.C.
Indianapolis, Indiana

# IN THE COURT OF APPEALS OF INDIANA

TIMOTHY W. PAUL,

Appellant-Defendant and Counter-Plaintiff,

vs.

STONE ARTISANS, LTD.,

Appellee-Plaintiff and Counter-Defendant.

No. 29A04-1406-PL-258

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D03-1304-PL-3510

**November 14, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Timothy Paul appeals the judgment of the trial court finding that he breached his contract with Stone Artisans, Ltd. (Stone Artisans), and foreclosing a mechanic's lien on his home. Finding no error, we affirm.

## FACTS

In September 2012, Timothy Paul wanted to replace the countertops and backsplashes in the bathrooms and kitchen of his home. Paul spoke with an interior designer who contacted Stone Artisans on his behalf. The interior designer provided Stone Artisans with information regarding the countertops and backsplashes that Paul desired for his home.

On September 11, 2012, Stone Artisans emailed Paul a contract detailing the cost of the necessary materials and labor needed to install the new countertops and backsplashes. The contract amount totaled $5,499.00. The email accompanying the contract stated: "Please approve of the following contract. Please email me that you approve of the attached contract." Appellant's App. p. 11. Later that day, Paul responded by email, simply stating "agree." Id.

The contract required half of the total amount, $2,749.50, to be paid before Stone Artisans would begin any work on Paul's home. Paul paid this amount by check and Stone Artisans began to perform the work, completing performance at some point before September 30, 2012. Upon completion, both Paul and the interior designer expressed their satisfaction with Stone Artisans's work.

Stone Artisans billed Paul for the remaining amount approximately seven days after completion of the work but did not receive payment from Paul. After a month had passed with no payment from Paul, Stone Artisans filed a Sworn Statement and Notice of Intention to Hold Mechanic's Lien (Mechanic's Lien) in the Office of the Hamilton County Recorder on October 29, 2012. The Mechanic's Lien identified the amount owed by Paul as $2,899.00.

About six months later, on April 17, 2013, Stone Artisans filed a Complaint to Foreclose Mechanic's Lien and for Damages in the trial court. Paul filed an answer on May 15, 2013, claiming, among other things, that no contract existed between the parties because there was not mutual assent to all essential terms and that the contract did not comply with the requirements of the Home Improvement Contract Act (HICA).[1] Paul's answer also included a counterclaim for damages pursuant to HICA.

The trial court held a bench trial on March 4, 2014, and found in favor of Stone Artisans, entering an in rem judgment as to Paul's home in the amount of $12,577.13. The judgment consisted of the balance due under the contract, attorney fees, costs, and interest. Paul now appeals.

## DISCUSSION AND DECISION

In entering its judgment in favor of Stone Artisans, the trial court issued findings of fact and conclusions of law. When the trial court issues findings of fact and conclusions of law, we employ a two-tiered standard of review. Cyr v. J. Yoder, Inc.,

[1] Ind. Code § 24-5-11-1 et seq.

762 N.E.2d 148, 149-50 (Ind. Ct. App. 2002). We first determine whether the evidence supports the findings and then we determine whether the findings support the judgment. Id. at 150. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. Infinity Prods., Inc. v. Quandt, 810 N.E.2d 1028, 1031 (Ind. 2004). We will consider only the evidence favorable to the findings and judgment and all reasonable inferences drawn therefrom. Id. We will not reweigh the evidence or assess the credibility of the witnesses. Id. at 1032. Questions of law will be reviewed under a de novo standard. Hayes v. Chapman, 894 N.E.2d 1047, 1052 (Ind. Ct. App. 2008).

## I. Contract Claims

Paul first claims that no valid contract existed because the contract sent by Stone Artisans failed to include all the essential terms of the agreement. The trial court disagreed, noting: "The Contract includes an offer, consideration, and acceptance and represents an enforceable contract between Stone Artisans and Mr. Paul." Appellant's App. p. 80.

Here, the contract between Stone Artisans and Paul was for the purchase and installation of countertops and backsplashes. The contract listed four countertops and backsplashes to be installed, and provided descriptions of the materials to be used and prices for each. The contract further specified that the countertops would contain cutouts for the sinks and faucets. Paul argues that, in order for the contract to include all essential terms, the contract "had to include measurements defining the position, size and shape for the sink and plumbing holes." Appellant's Br. p. 9. However, the contract was

sent to Paul before Stone Artisans came to Paul's home to take these measurements. Therefore, Paul argues that the contract sent by Stone Artisans was merely a preliminary negotiation because "the final essential terms do not appear in [the contract] and were never before the trial court." Id.

Our Supreme Court has held that "[a]ll that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made" and that "certainty in all terms is not required." Conwell v. Gray Loon Outdoor Mktg. Grp., Inc., 906 N.E.2d 805, 813 (Ind. 2009). Paul provides no support for his contention that the exact measurements of the size of the holes for the sink and the faucets were essential terms of the contract. Paul does not argue that he was induced into entering into the contract based, in part, upon his understanding of the exact size of these holes. The size of the holes, once determined, had no effect upon the price of the contract, which Paul had previously agreed to pay. In fact, Paul made his initial down-payment knowing that the contract was silent as to these measurements and that Stone Artisans would be coming to his home to take precise measurements before installation. In short, these terms are not the type one would generally consider essential and Paul fails to show how they were essential to him in this particular case.[2]

[2] Paul's argument regarding the height of the backsplashes can be similarly dealt with. The contract called for four-inch backsplashes, but shorter ones had to be installed due to the placement of mirrors in Paul's bathroom. Paul instructed Stone Artisans to shorten the backsplashes and leave the mirrors in place. Paul cannot now claim that, because the backsplashes were not exactly four inches, the contract is void. This term was neither essential in general, nor essential to Paul in this particular instance.

## II. Home Improvement Contract Act Claims

Paul next argues that the contract is void for failure to strictly comply with the requirements of HICA. The trial court found that although the contract did not satisfy all of HICA's requirements, it substantially complied with the Act, and this substantial compliance was sufficient to support a judgment in favor of Stone Artisans.

Under HICA, a home improvement contract is required to contain nine elements. I.C. § 24-5-11-10. The trial court found that Stone Artisans's contract contained all of these elements with two exceptions. The contract omitted "[t]he approximate starting and completion dates of the home improvements" and "a legible printed or a typed version of [the consumer's] name placed directly after or below the signature," as required by subsections (a)(6) and (a)(9), respectively. Id. Consequently, the contract failed to strictly comply with HICA.

Initially we note that, when interpreting statutes, "[c]ourts must consider the goals of the statute and the reasons and policy underlying the statute's enactment." Bowyer v. Ind. Dep't. of Natural Res., 944 N.E.2d 972, 988 (Ind. Ct. App. 2011) (quotations omitted). Additionally, we must consider the effects of our interpretation. Kitchell v. Franklin, 997 N.E.2d 1020, 1026 (Ind. 2013). This Court has observed that the purpose of HICA

> is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts . . . [because] few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with the well-known abuses found in the

> home improvement industry, served as an impetus for the passage of [HICA], and contractors are therefore held to a strict standard.

Benge v. Miller, 855 N.E.2d 716, 720 (Ind. Ct. App. 2006) (citations omitted). Consequently, HICA requires home improvement contracts for an amount greater than $150 to contain the nine elements listed in Indiana Code section 24-5-11-10.

Violations of HICA are labeled "deceptive acts" and are actionable by the attorney general or by the consumer. I.C. § 24-5-11-14. HICA provides victims of deceptive acts with the same remedies specified for victims of deceptive sales under the Deceptive Consumer Sales Act, which provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." I.C. §§ 24-5-11-14, -0.5-4. HICA also provides that "the court may void or limit the application of contracts or clauses resulting from deceptive acts . . . ." I.C. § 24-5-0.5-4(d) (emphasis added). Paul argues that, because the contract failed to strictly comply with HICA, the trial court was required to declare it entirely void.

This Court has observed that, generally, contracts made in violation of a statute are void. Imperial Ins. Restoration & Remodeling, Inc. v. Costello, 965 N.E.2d 723, 728 (Ind. Ct. App. 2012). However, "because we value freedom of contract so highly," we will not void a contract for contravening a statute unless the statute dictates unambiguously that such contravention renders a contract void. Id. "The Indiana

General Assembly has made clear its intent that certain types of contracts not be enforced by declaring them 'void' or 'unenforceable.'" Id.

With respect to HICA, the General Assembly has not included a provision that contracts that violate HICA's requirements are void. Rather, HICA creates a cause of action for which voiding the contract is one possible remedy. Costello, 965 N.E.2d at 729. This Court has previously elaborated:

> We must [] conclude from . . . the legislature's failure to use words like "void" or "unenforceable" in HICA to describe contracts made in violation thereof, as well as the inclusion of remedial provisions to be invoked in the event of a violation, one of which is voiding the contract, that the General Assembly did not intend [] every contract made in violation of HICA to automatically be void.

Costello, 965 N.E.2d at 729. Thus, the statute leaves it to the trial court to determine whether voiding the contract is an appropriate remedy.[3]

In making this decision, the trial court must apply a balancing approach and examine certain factors to determine if the contract violates public policy. Id. The court should consider (1) the nature of the subject matter of the contract, (2) the strength of the public policy underlying the statute, (3) the likelihood that refusal to enforce the bargain or term will further that policy, (4) how serious or deserved the forfeiture suffered by the party attempting to enforce the bargain would be, and (5) the parties' relative bargaining power and freedom to contract. Id.

---

[3] Paul appears to acknowledge this when he refers to contracts made in violation of HICA's provisions as "voidable" rather than void. Appellant's Br. p. 5, 8, 10. However, Paul is incorrect in his assertion that such contracts are "voidable by the consumer." Id. at 8. Indiana Code section 24-5-0.5-4(d) leaves this decision to the trial court.

As noted above, the public policy underlying HICA is to protect consumers when making home improvement contracts. However, the trial court observed that in this case, "[n]ot enforcing the contract would do little to further the policy behind [HICA]." Appellant's App. p. 86. HICA was a response to "well-known abuses found in the home improvement industry." Benge, 855 N.E.2d at 720. The trial court found no such abuse here, noting that "[d]espite any deficiencies in the contract, Mr. Paul received the benefit of Stone Artisans' services and was fully aware of all the terms of his relationship with Stone Artisans." Appellant's App. p. 86.

In regard to the forfeiture that would be suffered by Stone Artisans were the contract not enforced, the trial court noted that "[a]t no time prior to the completion of the work at the Paul Residence, and Mr. Paul's approval of Stone Artisans' work, did Mr. Paul make any complaint to Stone Artisans regarding the condition of the work." Appellant's App. p. 82. Paul failed to identify any damage he suffered as a result of any deficiencies in the contract with Stone Artisans. We reiterate that HICA allows "[a] person relying upon an uncured or incurable deceptive act" to "bring an action for the damages actually suffered . . . ." I.C. § 24-5-0.5-4 (emphasis added). Although Paul argued at trial that Stone Artisans's work failed to meet industry standards, "[n]o documentary evidence . . . was submitted to support Mr. Paul's claim that Stone Artisans did not perform its work at the Paul Residence in a workmanlike manner in accord with

applicable industry standards."[4] Appellant's App. p. 81. As a result, the trial court found that "[a] forfeiture of Stone Artisans' rights under the Contract would be wholly undeserved."[5] Appellant's App. p. 86.

We agree with the trial court's determination that a consideration of the relevant factors points decisively towards enforcing this contract. Although any violation of HICA is considered a "deceptive act," Paul was not deceived here. I.C. § 24-5-11-14. He contracted for services which were performed to his satisfaction. It was not until it came time to pay for these services that he lodged any complaint. Appellant's App. p. 82. HICA aims to protect consumers from abuse, not to provide an escape from legitimate contractual obligations.

The judgment of the trial court is affirmed and the cause is remanded to the trial court for further calculation of appellate attorney fees and costs as provided for in the contract.

ROBB, J., and BARNES, J., concur.

---

[4] Paul once again points to the size of the backsplashes, arguing that four-inch backsplashes were the "industry standard." Appellant's Br. p. 5. While this may be true, Paul fails to indicate how deviating from a four-inch backsplash, per Paul's instructions, would result in a failure to perform the work in a workmanlike manner in accord with applicable industry standards. Stone Artisans testified that it was common practice to alter the size of backsplashes in such a situation. Tr. p. 25. Paul argues that the change was a modification that HICA requires to be in a signed writing. I.C. § 24-5-11-10(d). Even if we agreed, we have already determined that failure to strictly comply with HICA does not automatically render the entire contract void. Paul's requested remedy is wholly out of proportion to any damage he may have suffered as a result of receiving backsplashes that were less than four inches.

[5] In regard to relative bargaining power, Paul admits that the "parties' relative bargaining power and freedom to contract is probably about equal." Appellant's Br. p. 20.