
FILED
Sep 14 2015, 8:36 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jason R. Delk
Delk McNally LLP
Muncie, Indiana

ATTORNEY FOR APPELLEE

Cynthia A. Marcus
Marcus Law Firm, LLC
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas A. Ambrose II,<br>*Appellant,*<br><br>v.<br><br>Dalton Construction, Inc.,<br>*Appellee* | September 14, 2015<br><br>Court of Appeals Case No.<br>29A02-1407-CC-479<br><br>Appeal from the Hamilton Superior Court<br>The Honorable William J. Hughes, Judge<br>Trial Court Cause No.<br>29D03-1202-CC-1996 |

**Robb, Judge**

## Case Summary and Issues

[1]   Dalton Construction, Inc., filed a complaint against Thomas A. Ambrose II, individually and as trustee of the Ambrose Family Trust (collectively, "Ambrose"), after disputes arose concerning the construction of a pool on property owned by Ambrose. Ambrose raises several issues on appeal, which we consolidate and restate as: 1) whether the trial court properly denied him summary judgment because a genuine issue of material fact existed as to

whether Dalton Construction breached the contract; and 2) whether the trial court's findings and conclusions that Ambrose first breached the contract, the contract called for a certain shaped pool, and Dalton Construction was entitled to payment upon Ambrose's unauthorized occupancy of the pool were clearly erroneous. Dalton Construction cross-appeals for appellate attorney's fees. Concluding that the trial court properly denied summary judgment and that the trial court's findings and conclusions are not clearly erroneous, we affirm the trial court's judgment in favor of Dalton Construction. Also concluding Dalton Construction is statutorily entitled to an award of appellate attorney's fees, we remand to the trial court for calculation of those fees.

## Facts and Procedural History

In the late spring of 2011, Ambrose contracted with Dalton Construction to build an in-ground swimming pool at the Ambrose home located in Carmel. Dalton Construction's president, Kevin Bonnet, had over twenty years of experience building pools. Bonnet met with Ambrose and Ambrose's wife, Denise, on five to ten occasions before the parties signed the pool contract. The contract provided in relevant part as follows:

> Owner and contractor in consideration of the mutual covenants hereinafter set forth agree as per proposals pool and spa attached as exhibit "A" and construction contract as follows:
>
> * * *
>
> SECTION II
> Plans

Contractor shall construct the structure in conformance with the plans, specifications, and breakdown and binder receipt signed by contractor and owner, and will do so in a workmanlike manner.

* * *

SECTION IX

General Provisions

* * *

There are no understandings or agreements between contractor and owner other than those set forth in this agreement and in the documents referred to in Sections Two and Three. No other statement, representations or promise has been made to induce Either party to enter into this agreement. This agreement and the documents referred to in Sections Two and three may not be modified or amended except by written agreement of the parties.

Plaintiff's Exhibit 1 [sic throughout]. Attached to the contract was Proposal Exhibit "A," which provided that the size of the pool would be an "18' x 36' Rectangle Shallow Pool." *Id.* Section VII of Proposal Exhibit "A" provided that the coping[1] for the pool would have "2' Radius Corners." *Id.* Prior to the execution of the contract, Bonnet discussed every item in Proposal Exhibit "A" "[l]ine by line" with Ambrose. Transcript at 114. Bonnet explained to Ambrose that the contract called for two-foot radius corners because the rounded corners placed less stress on the pool liner and, therefore, rendered the liner more durable.

[3] As part of its application for a permit to build a pool, the City of Carmel required that a plot plan be submitted showing the distance the proposed pool

---

[1] Coping is a metal band that runs along the rim of a pool to which the liner is attached.

would be from the owner's property lines. The plot plan was not required to indicate the distance of the pool from the owner's house. Ambrose provided Bonnet with a survey map of the property, which Bonnet used to prepare the plot plan for the pool permit. Plaintiff's Ex. 3A. That plot plan showed the distances of the proposed pool from Ambrose's property lines. It also depicted the pool deck as directly abutting the house deck. Ambrose did not see the plot plan that was included in the pool permit application before signing the contract with Dalton Construction.

[4] After the permit application was submitted, the Ambroses and Bonnet met on several occasions to discuss the location of the pool. Once the Ambroses decided where they wished the pool to be located, Bonnet demarcated the boundaries of the pool and the pool deck on the ground using metal stakes, string, and orange paint. Bonnet preferred to determine the location in this manner so that his clients could better visualize the pool in real life, as opposed to seeing a drawing on a site plan. When Bonnet and his crew arrived at the Ambrose home with their equipment ready to begin excavation, Denise told Bonnet that she wanted to move the location of the pool. Bonnet and his crew then restaked the pool in the new location and remarked the pool and pool deck boundaries with string and paint. Denise told Bonnet that she wanted Ambrose, who was away at the time, to approve the change, so the crew quit work for the day. When the crew returned the next morning, Denise informed Bonnet that Ambrose had approved the pool's final location. The pool was constructed in that location. The Ambroses monitored the building of the pool

almost every day from their deck. Between the beginning of excavation on August 11, 2011, and the day work ceased on the pool over a month later, the Ambroses never informed Dalton Construction that the pool was in the wrong location. On September 15, 2011, the parties executed an addendum to the contract that provided for additional items of work. Ambrose made all payments as per the contract's payment schedule up until work on the pool ceased.

[5] On September 21, 2011, a sub-contractor began making stress cuts in the freshly poured concrete pool deck. Denise became irate about the positioning of the cuts, which she felt were not like a neighbor's pool deck that she admired. Denise also stated that the concrete was not the color she had selected. Denise told the sub-contractor that he could not finish the deck. Bonnet met with Ambrose in October to attempt to resolve the issues so that the work could be completed. Ambrose demanded that Dalton Construction demolish the pool and replace it with a pool with squared corners. Ambrose refused to pay the balance due on the contract until the pool was replaced. The total amount owed on the contract was $21,775.00. After thinking about it overnight, Bonnet declined to replace the pool. Bonnet offered to finish the work according to the contract, but Ambrose refused that offer. Ambrose would only allow Dalton Construction onto his property to replace the pool, not to finish the pool. Ambrose did not state at that time that the pool was not in the location required by the contract.

[6] At the time that work on the pool ceased, the concrete deck had not been sealed, which would have completed the coloring process. The pool cover, an electric plug, a slide, ladders, and some mini-jets remained to be installed. The yard was not regraded and reseeded, Dalton Construction had yet to provide safety and testing equipment, and the final inspection by the City of Carmel had not been done. Ambrose completed some of the work himself. Photographs taken of the pool after work ceased showed furniture, a collection of floatation devices, and a towel rack near the pool, as well as an inflatable raft floating in the clear, filled pool.

[7] On October 21, 2011, Dalton Construction filed a mechanic's lien against Ambrose's property, and litigation commenced. The trial court denied Ambrose's motion for summary judgment. After a two-day bench trial, the trial court entered judgment in favor of Dalton Construction. The trial court awarded Dalton Construction $21,775.00 on the contract and $42,525.00 in costs and attorney's fees. Ambrose now appeals. Additional facts will be added as necessary.

# Discussion and Decision

## I. Denial of Summary Judgment

### A. Standard of Review

[8] Our standard of review for a trial court's denial of a motion for summary judgment is well-settled. Summary judgment is appropriate only where there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. "On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity." *Van Kirk v. Miller*, 869 N.E.2d 534, 540 (Ind. Ct. App. 2007), *trans. denied.* The party appealing from the summary judgment order has the burden of persuading us the decision is erroneous. *Id.*

## B. Existence of a Genuine Issue of Material Fact

[9] Ambrose argues that the "plans, specifications, and breakdown and binder receipt signed by the contractor and owner" referenced in the contract unambiguously referred to the plot plan, which showed the pool deck abutting the home's deck. Plaintiff's Ex. 1. Ambrose contends that, because it was undisputed that the pool was not built in the location indicated in the plot plan, the trial court erred when it denied his motion for summary judgment. In the alternative, Ambrose contends that the contract is ambiguous about location and that the ambiguity must be construed against Dalton Construction as the drafter of the contract. Dalton Construction counters that the contract was silent as to the location of the pool and that Denise orally determined the pool's location.

[10] In its materials designated in opposition to summary judgment, Dalton Construction showed that the location of the pool was determined at the build site by the Ambroses. The pool site was demarcated with stakes, string, and paint. On the day that excavation of the pool was to commence, Denise asked Dalton Construction to change the location of the pool, which was done. Ambrose denied that Denise directed Dalton Construction to change the location of the pool. Thus, a genuine issue of material fact existed regarding where the pool was to be located, precluding summary judgment.

[11] Contrary to Ambrose's arguments on appeal, there is no need for us to construe the contract in this case. Whatever the contract provided, or did not provide, as to location, a genuine issue of material fact existed about whether Denise changed the final location of the pool. Also unpersuasive is Ambrose's argument that the parties could not have orally modified the contract because the contract provided that it could only be modified by written agreement. Such contract provisions may themselves be orally modified. *See Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 161 (Ind. 2005) (noting that, "[e]ven a contract providing that any modification thereof must be in writing, nevertheless may be modified orally."). Because there was a direct conflict of designated evidence

about whether Denise requested a change of location of the pool, the trial court did not err when it denied Ambrose's motion for summary judgment.[2]

# II. Judgment After Trial

## A. Standard of Review

At Ambrose's request, the trial court entered findings of fact and conclusions thereon at the conclusion of the bench trial. When the trial court issues findings of fact and conclusions, we employ a two-tiered standard of review. *See Paul v. Stone Artisans, LTD.*, 20 N.E.3d 883, 886 (Ind. Ct. App. 2014).

> We first determine whether the evidence supports the findings and then we determine whether the findings support the judgment. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. We will consider only the evidence favorable to the findings and judgment and all reasonable inferences drawn therefrom. We will not reweigh the evidence or assess the credibility of the witnesses. Questions of law will be reviewed under a de novo standard.

*Id*. (citations omitted). We may affirm on a legal theory not espoused by the trial court if we are confident that the affirmance is consistent with the trial

---

[2] Our resolution of this issue obviates the need to address Ambrose's claim that the trial court erred when it denied summary judgment on the issue of his damages. In addition, in the summary judgment section of his Brief, Ambrose mentions a *quantum meruit* claim raised by Dalton Construction, but he fails to develop any argument with citations to the record or to legal authority. He has, therefore, waived that issue on appeal. Ind. Appellate Rule 46(A)(8)(a); *Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."). We would note that the trial court ultimately found in Ambrose's favor on that claim.

court's factual findings. *See Mitchell v. Mitchell*, 695 N.E.2d 920, 923-24 (Ind. 1998).

## B. Contract Silent as to Location

The trial court found that "[i]t is abundantly clear that the [c]ontract does not specify location." Appendix of Appellant at 18. Ambrose argues that the trial court's conclusion that the contract did not specify a location for the pool was clearly erroneous. He largely reiterates the arguments he offered in support of his motion for summary judgment, inviting us to interpret the contract to include the plot plan, which shows the placement of the pool that he desires.

However, as noted above, it is not necessary for us to interpret the contract in order to review the ultimate issue of whether Dalton Construction breached the contract. Whatever the parties intended when they entered into the written contract was modified when, as found by the trial court, Denise requested that the pool be moved on the day excavation was to begin. Dalton Construction then built the pool in that location.

On appeal, Ambrose contends that "any alleged oral modification of the 'plans and specifications' (location of the pool) is prohibited by the [c]ontract and, therefore, irrelevant to the resolution of this case." Brief of Appellant at 24. As noted above, this argument flies in the face of legal precedent holding that "no oral modification" clauses may themselves be orally modified. *See Sees,* 839 N.E.2d at 161. At trial, Denise and Ambrose denied making the oral request to move the pool. Therefore, there was a factual determination to be made by the

trial court on this issue that it resolved in favor of Dalton Construction. We will not second-guess the trial court by reassessing the credibility of the witnesses or reweighing the evidence. *Paul*, 20 N.E.3d at 886. The trial court's overriding conclusion that the Ambroses chose the location of the pool is supported by the record and is, therefore, not clearly erroneous.[3]

## C. Two-Foot Radius Corners

[17] Next, Ambrose argues that the trial court erred when it found that the contract called for two-foot radius corners, as opposed to the ninety-degree-angle corners he desired. The interpretation of contract provisions is a question of law. *Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind. Ct. App. 2000). Unless contract terms are ambiguous, we give them their plain and ordinary meaning. *Id.* Controversy between the parties regarding interpretation of contract terms does not necessarily mean the contract is ambiguous. *Id.* When provisions of a contract are clear and unambiguous, they are conclusive and we will not construe the contract or look at extrinsic evidence; rather, we will merely apply the contractual provisions. *Id.* The paramount goal in interpreting a contract is to ascertain and effectuate the intent of the parties. *Bernel v. Bernel*, 930 N.E.2d 673, 682 (Ind. Ct. App. 2010), *trans. denied*.

---

[3] In a related argument, Ambrose contends that the trial court's conclusion that he was the first to breach the contract is clearly erroneous, as Dalton Construction committed the first breach by constructing the pool in the wrong location. Because we affirm the trial court's findings and conclusion that the Ambroses selected the location of the pool, we need not address this argument.

[18] The contract and its attached Proposal Exhibit "A" provided for an "18' x 36' Rectangle Shallow Pool" with "2' Radius Corners." Plaintiff's Ex. 1. We agree with the trial court that these contract provisions are unambiguous as to the shape of the pool: It was to be a rectangle with two-foot radius corners. Ambrose's argument on appeal asks us to construe these unambiguous terms and to consider evidence that is extrinsic to the contract. Finding no ambiguity, we decline to do so. *See Niccum*, 734 N.E.2d at 639.

## D. Conditions Precedent to Recovery

[19] The trial court found that "[b]y taking possession of the pool Ambrose acknowledged the pool was complete and released the contractor from further obligation [sic] at [sic] that point the sums under the contract became due in full." App. of Appellant at 26. Ambrose claims the trial court incorrectly interpreted the contract and that its findings are clearly erroneous. However, an examination of the contract and the facts adduced at trial shows that Ambrose's claim is without merit.

[20] The contract provided in relevant part:

> Section VII
>
> Possession
>
> Owner shall not have possession of the structure until such time as all payments or other obligations required them as set forth in this agreement have been fully paid or performed by them and until the certificate of occupancy has been issued. If owner takes possession of structure before the above obligations are met, without the written consent of contractor, the owner shall consider it as acceptance of the structure, *as complete and satisfactory* releasing [Dalton Construction] of

> any & all further responsibilities including but not limited to
> unfinished work, warranties, pool obligations and legal proceedings.

Plaintiff's Ex. 1 [sic throughout] (emphasis added). The contract's payment schedule provided that 10% of the contract amount would be due "when deck is *complete*" and that an additional 10% would be due "when pool is *complete*."[4] *Id*. (emphasis added).

[21] Thus, according to the unambiguous terms of the contract, unauthorized possession of the structure by Ambrose constituted his acknowledgement that the structure was complete, triggering his obligation to pay according to the payment schedule. Despite these unambiguous contract provisions, Ambrose argues that the contract merely relieved Dalton Construction of its obligation to complete unfinished work upon his unauthorized possession, not that such possession triggered his obligation to pay sums due on the contract. However, it is a principle of contract interpretation that "specific words and phrases cannot be read exclusive of other contractual provisions; rather, the parties' intentions must be determined by reading the contract in its entirety and attempting to construe contractual provisions so as to harmonize the agreement*." Johnson v. Dawson*, 856 N.E.2d 769, 773 (Ind. Ct. App. 2006). The trial court's interpretation of the contract harmonized the payment schedule with Section VII of the contract.

---

[4] Ambrose makes no separate argument pertaining to monies owed by him pursuant to the September 15 addendum to the contract.

Furthermore, the evidence at trial was that, after Dalton Construction had been excluded from the property, Ambrose maintained the pool water so that it was clear. The yard around the pool had been re-landscaped. The pool cover was installed and was being used. Furniture, a towel rack, and pool toys were placed around the deck. A photo submitted into evidence depicted an inflatable raft floating in the open pool. This evidence supports the trial court's finding that Ambrose took possession of the pool. Given the trial court's interpretation of the contract and the evidence of Ambrose's unauthorized possession of the pool, we cannot say that the trial court's findings and conclusions on this issue are clearly erroneous.

## III. Appellate Attorney's Fees

Dalton Construction cross-appeals for appellate attorney's fees. The mechanic's lien statute provides that a lienholder who prevails is entitled to recover "reasonable attorney's fees." Ind. Code § 32-28-3-14(a). The statute also encompasses attorney's fees associated with appellate proceedings. *See Templeton v. Sam Klain & Son, Inc.*, 425 N.E.2d 89, 94-95 (Ind. 1981). Lienholder Dalton Construction has prevailed in this appeal. We remand this matter to the trial court for the determination and award of reasonable appellate attorney's fees.

## Conclusion

The trial court's denial of summary judgment to Ambrose was proper given that a genuine issue of material fact existed regarding the placement of the pool.

The evidence at trial supported the trial court's findings and conclusions in favor of Dalton Construction and the judgment is therefore affirmed. As Dalton Construction is statutorily entitled to appellate attorney's fees, we remand this matter to the trial court for proceedings consistent with this opinion.

[25] Affirmed and remanded.

May, J., and Mathias, J., concur.