# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2019, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lindsay H. Lepley
Burt, Blee, Dixon, Sutton
  & Bloom, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE,
VIKING, INC.

Matthew J. Elliott
Beckman Lawson, LLP
Fort Wayne, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NBD International, Inc.,<br>*Appellant-Defendant,*<br><br>    v.<br><br>Viking, Inc.,<br>*Appellee-Plaintiff*<br><br>Selective Insurance Company of America,<br>*Appellee-Defendant* | February 4, 2019<br><br>Court of Appeals Case No.<br>18A-PL-509<br><br>Appeal from the Whitley Superior Court<br><br>The Honorable Douglas M. Fahl, Judge<br><br>Trial Court Cause No.<br>92D01-1601-PL-6 |

**Vaidik, Chief Judge.**

# Case Summary

[1] NBD International, Inc., appeals the denial of its motion to dismiss the lawsuit filed against it by Viking, Inc. We affirm.

# Facts and Procedural History

[2] We summarize the trial court's findings of fact, none of which NBD challenges on appeal, as follows. Viking manufactures exhaust parts at a facility in Columbia City. On January 6, 2014, a fire caused significant damage to the facility. Viking contacted its insurer, Selective Insurance Company of America, which in turn retained NBD, an Ohio company, to perform a "technical assessment" in order to "determine the nature and scope of the damage, and what needed to be done to fix it." Appellant's App. Vol. III pp. 3-4. NBD performed this work on January 15-17. At some point, NBD asked Viking's president, Steve Schwenn, to sign a "Work Authorization to Proceed" ("Work Authorization") so that NBD could perform the next phase of the work: cleaning and repair. When Schwenn signed, the blanks on the form were empty, and no rate sheet was attached.[1] NBD performed cleaning and repair work for half a day on January 18 and all day on January 19. On the morning of January 20, Viking halted NBD's work. However, NBD remained on site to do "consulting work" on behalf of Selective. On January 23, Viking asked

---

[1] On this point the trial court accepted Schwenn's version of events. NBD disputes that version, but it has chosen not to challenge the trial court's findings for purposes of this appeal.

NBD to do some additional cleaning work, but this work was halted on January 24, and NBD left the project on January 25.

[3] In January 2016, Viking filed suit against NBD and Selective in Whitley Superior Court, alleging "incompetent work" by NBD, "mishandling" of the claim by Selective, and, as a result, "losses to its equipment and machines far in excess of its insurance coverage limits" as well as "a loss of business customers." Appellant's App. Vol. II p. 16. Against NBD, Viking claimed breach of contract and negligence, and against Selective, Viking claimed breach of contract, bad faith, negligent hiring, and negligence.

[4] NBD responded to the claims against it with a motion to dismiss based on the Work Authorization that Schwenn had signed. Specifically, NBD relied on the following forum-selection clause that was included in the Work Authorization: "In the event that any legal proceedings are necessary, they will be brought in the courts of Summit County, Ohio and NBD International Inc. shall be entitled to recover the cost of collection to include reasonable attorney fees." *Id.* at 89. NBD argued that this clause is applicable and requires dismissal because (1) each of Viking's claims against NBD "arises out of the Work Authorization and/or the performance or supposed non-performance of obligations related to the Work Authorization" and (2) "it is the terms of that Work Authorization that governs the relationship between Viking and NBD." *Id.* at 72-73.

[5] In its response to NBD's motion, Viking contended that dismissal based on the forum-selection clause would be inappropriate for four independent, alternative reasons. First, Viking argued that "only a small portion of the work NBD performed on the Viking project was covered by the [W]ork [A]uthorization." *Id.* at 95. Specifically, Viking asserted that NBD's work occurred in three phases: the assessment of the damage on behalf of Selective between January 15 and 17, the cleaning and repair work pursuant to the Work Authorization from mid-day on January 18 through the morning of January 20, and the consulting work on behalf of Selective on between January 20 and 25. Viking argued that all of NBD's "9 or so days" of work on the job are at issue, that "only one-and-a-half to two days involved the remediation work covered by the [W]ork [A]uthorization," and that dismissal based on the Work Authorization would therefore be improper. *Id.* Second, Viking asserted that the forum-selection clause's provision that "NBD International Inc. shall be entitled to recover the cost of collection to include reasonable attorney fees" limits the applicability of the clause to collection actions brought by NBD itself. Third, Viking argued that the blank Work Authorization "is not sufficiently definite to be a binding contract." *Id.* at 95, 103. And fourth, Viking contended that the forum-selection clause is unenforceable because (1) "there was no meeting of the minds or free negotiation regarding the contract in general, let alone the forum selection clause," and (2) "enforcement of the forum selection clause is unreasonable and unjust because it would severely interfere with the orderly allocation of judicial business, and contradict public interests." *Id.* at 96.

[6] In December 2017, the trial court issued an order denying NBD's motion to dismiss. The court agreed with three of Viking's arguments: that the Work Authorization covered only a small percentage of NBD's work, that the blank Work Authorization form is not sufficiently definite to be a binding contract, and that the forum-selection clause is unenforceable under the circumstances. At NBD's request, the trial court certified its order for interlocutory appeal, and this Court accepted jurisdiction.[2]

# Discussion and Decision

[7] NBD contends that the trial court erred by denying its motion to dismiss. The parties agree that our review of the motion is de novo. Appellant's Br. p. 16; Appellee's Br. p. 14.[3]

[8] NBD begins by challenging the trial court's conclusion that the Work Authorization containing the forum-selection clause is not sufficiently definite to be an enforceable contract. NBD cites our Supreme Court's holding that "[a]ll that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made" and that "absolute certainty in

---

[2] Viking argues that our motions panel erred by accepting jurisdiction and that the appeal should be dismissed. Having reviewed the matter, we disagree.

[3] NBD framed its motion as a motion to dismiss for lack of personal jurisdiction under Trial Rule 12(b)(2). Viking does not dispute that such a motion is the proper mechanism for enforcing a forum-selection clause. We are not so sure. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60-61 (2013) (holding that in federal court "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*"). Ultimately, however, we need not express an opinion on the issue.

all terms is not required." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009). NBD contends that the Work Authorization form, even with the blanks empty, included "all necessary terms[.]" Appellant's Br. p. 19. The "Preliminary Scope of Work" section includes the following introductory language: "The initial focus is to ascertain the logical recovery process to return customer to operation in as quickly a manner as is reasonably possible. Therefore, NBD International Inc. is authorized to proceed and agrees to perform the services including but not limited to the following:" Appellant's App. Vol. II p. 89. The "Direct Authorization" section of the form includes the following language:

> The owner and/or authorized representatives authorize NBD International Inc. to proceed with mobilization and setup for disaster recovery services pertaining to the above mentioned property. It is understood that the customer is responsible for charges incurred as per this authorization and any change orders that may be instituted and that NBD may exercise lien right to secure payment. All costs and charges are due in accordance with the attached rates. A detailed scope, if needed, and an estimate will be prepared upon completion of a full site assessment and survey.

*Id.* We are inclined to agree with the trial court that these terms are not sufficiently definite to constitute a binding contract. While the form generally indicates that NBD will be doing some sort of assessment, it does not identify any specific work that NBD will be doing, nor does it say how much NBD will be paid for its work (and the rates were not actually attached). *Cf. Paul v. Stone Artisans, Ltd.*, 20 N.E.3d 883 (Ind. Ct. App. 2014) (holding that "a contract

detailing the cost of the necessary materials and labor needed to install [] new countertops and backsplashes" contained all essential terms).

[9]     But even if we were to assume that the Work Authorization is an enforceable contract, we agree with the trial court's conclusion that dismissal of Viking's entire action against NBD based on the forum-selection clause would be inappropriate because the Work Authorization (including the forum-selection clause) applied only to the second of the three phases of NBD's work: cleaning and repair.[4]  NBD does not dispute the trial court's finding that "all of NBD's work is at issue in this case," Appellant's App. Vol. III p. 8, but it contends that the three phases were part of a "single business transaction" and that "the forum selection clause in the Work Authorization is applicable to that entire transaction," Appellant's Br. p. 24.[5]  NBD asserts that this argument is supported by our decision in *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43 (Ind. Ct. App. 2005).  We disagree.

---

[4] Also for this reason, we need not address the trial court's alternate conclusion that the forum-selection clause, even if it were applicable on its face, is unenforceable under the circumstances of this case.

[5] In its opening brief, NBD suggests in passing that "Viking's Complaint appears to only allege claims arising out of NBD's performance of 'cleaning and restoration services in compliance with its agreement,'" i.e., the second phase of NBD's work, as opposed to the technical assessment (phase one) or the consulting (phase three).  Appellant's Br. p. 24.  But NBD does not further develop this assertion, focusing instead on its argument that the three phases were all parts of a "single business transaction."  *See id.* at 22-26.  In its reply brief, however, NBD argues emphatically that Viking's claims against it are based on only the "cleaning and restoration services."  Appellant's Reply Br. pp. 7-9.  An argument raised for the first time in a reply brief is waived.  *French v. State*, 778 N.E.2d 816, 826 (Ind. 2002).  Waiver notwithstanding, a review of Viking's complaint, which includes a detailed description of all of NBD's activities at Viking's facility, reveals that Viking's claims against NBD are not limited to the second phase of NBD's work.

Dexter Axle purchased business software from Baan USA pursuant to a software agreement that did not include a forum-selection clause. One month later, because Dexter Axle would need Baan USA's help to implement the software, the parties entered into a consulting agreement that included a forum-selection clause that established "exclusive jurisdiction and venue in the state and federal courts sitting in Santa Clara County, California." Later that year, Dexter Axle filed suit against Baan USA in Indiana state court, claiming that the software was not working as intended. Dexter Axle made a total of twelve claims relating to the software itself and also to Baan USA's consulting services. Baan USA moved to dismiss Dexter Axle's complaint based on the forum-selection clause in the consulting agreement. The trial court granted Baan USA's motion, and Dexter Axle appealed. Dexter Axle argued, among other things, that the forum-selection clause in the consulting agreement applied only to Dexter Axle's contract claims under that agreement. We disagreed, explaining that the two agreements "were part of a single business transaction" directed at the same objective: the licensing and implementation of business software. *Id.* at 51. As such, we held that the forum-selection clause in the consulting agreement applied to all of Dexter Axle's claims.

This case is distinguishable from *Dexter Axle* for a very simple reason: the two agreements that we found to be part of a "single business transaction" in *Dexter Axle* were both entered into by the same two parties, and everything Baan USA did was done for and on behalf of Dexter Axle, pursuant to those two agreements. Here, on the other hand, NBD performed two of the three phases

of its work (the initial technical assessment and later the consulting) on behalf of, and at the direction of, Selective. NBD went to Viking's facility at Selective's behest to do the technical assessment, and later, after Viking halted NBD's cleaning and repair work, NBD remained at the facility at Selective's behest to do the consulting work. Because those first and third phases of NBD's work were not governed by the Work Authorization, the forum-selection clause in the Work Authorization does not apply to any claims arising from those two phases. And for that reason, dismissal of Viking's entire action against NBD based on the forum-selection clause would be improper.[6]

Affirmed.

Riley, J., and Kirsch, J., concur.

---

[6] We need not decide whether Viking's claims arising from the second phase of NBD's work should be isolated, dismissed, and brought in Ohio, since NBD does not make such an argument. NBD's sole contention is that **all** of Viking's claims against it should be dismissed.