FILED

Nov 18 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

John P. Higgins
Brooke Smith
Katz Korin & Cunningham
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William K. Doss
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

McGraw Property Solutions,
LLC,

*Appellant-Plaintiff,*

v.

Jason Jenkins,

*Appellee-Defendant.*

November 18, 2020

Court of Appeals Case No.
20A-PL-630

Appeal from the Boone Superior
Court

The Honorable Bruce E. Petit,
Judge

Trial Court Cause No.
06D02-1708-PL-1000

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, McGraw Property Solutions, LLC (McGraw), on interlocutory appeal, appeals the trial court's summary judgment in favor of Appellee-Defendant, Jason Jenkins (Jenkins), concluding that Jenkins timely cancelled the contract within three days of acceptance.

We affirm.

# ISSUE

McGraw presents this court with two issues on appeal, which we consolidate and restate as the following single issue: Whether a genuine issue of material fact exists that Jenkins did not timely cancel the contract when McGraw had cured the deficiencies included in the original contract and back-dated the replacement cure agreement to the effective date of the original agreement.

# FACTS AND PROCEDURAL HISTORY

In the spring of 2017, Jenkins' property in Boone County was damaged during a severe storm. McGraw is a general contractor focusing primarily on storm remediation. On June 11, 2017, Jenkins and McGraw entered into an agreement whereby McGraw promised to complete all storm remediation work to the property for the price approved by Jenkins' insurer. The contract provided that "[i]f the insurance company does not approve your claim, this agreement automatically terminates." (Appellant's App. Vol. II, p. 19). It also required Jenkins to pay McGraw 20% of the replacement cost value as liquidated damages if Jenkins refused to allow McGraw to finish the work.

After the execution of the agreement, a representative of McGraw surveyed and documented the storm damage. McGraw took comprehensive measurements of the damage, generating a nine-page document detailing the materials, types, quantities, and costs for every item needing replacement. McGraw's estimate indicated a total replacement cost value of $170,559.63. Approximately one month later, on or about July 11, 2017, Jenkins decided that he would not complete the repairs, but would sell his property and relocate to Florida. On August 10, 2017, Jenkins' insurer approved Jenkins' claim with a replacement cost value of $109,371.97 and issued a total payment to Jenkins in the amount of $64,597.37.

On August 15, 2017, McGraw filed its Complaint against Jenkins, raising claims for breach of contract, unjust enrichment, and promissory estoppel. On October 18, 2017, Jenkins responded with a Notice of Violations under the Home Improvements Contracts Act (HICA), alleging, in pertinent part, that:

> Pursuant to I.C. [§] 24-5-11-10(a), the [c]ontract lacked several minimum statutory requirements. It did not include the date it was submitted to my client or the time limitation on my client's acceptance of the [c]ontract, a violation of paragraph (3); the [c]ontract did not include the approximate starting and completion dates of the improvements, a violation of paragraph (6); and it did not include a statement of any contingencies that would materially change the approximate completion date, a violation of paragraph (7).

> Pursuant to I.C. [§] 24-5-11-10(c), the [c]ontract start and end dates of 'TBD' are insufficient, and are violations of paragraphs (1) and (3). Further, the [c]ontract failed to inform my client of

his rights under section 10.5(b), as intentionally omitted proper notice of cancellation language and form as required under paragraph (6). My client was never informed of this right to cancellation within three (3) days of notification from his insurance company that all or part of the claim or contract was not a covered loss as is required by I.C. [§] 24-5-11-10.5(b). Had the notice been given, which is required under the law, my client would have rescinded the contract that forms the basis for the [C]omplaint.

Pursuant to I.C. [§] 24-5-11-10.5(b), a home improvement supplier shall not act as a public adjuster. However, two full paragraphs of the [c]ontract discuss McGraw's experience and expertise to assist with claims and work with insurance representatives to get homeowners fair repair or replacement allowances from their insurance company. In essence, McGraw is claiming to do the actions of a public adjuster in all but name, which further violates HICA.

Pursuant to I.C. [§] 24-5-11-11, the [c]ontract failed to include the contractor's written signature indicating the contractor's unequivocal agreement to the term of the [c]ontract. Further, as there was no contractor signature, neither did my client's copy of the [c]ontract include the date of the contractor's execution of the [c]ontract, a violation of I.C. [§] 24-5-11-12.

(Appellant's App. Vol. II, pp. 54-55). In accordance with HICA's provision to cure the deficiencies, Jenkins demanded that McGraw submit a replacement cure contract.

[6] On August 24, 2017, McGraw issued a replacement cure contract which, according to its terms, related back to June 11, 2017, *i.e.,* the date of the original

contract. With respect to the right to cancel, the replacement cure contract provided:

> You may cancel this contract at any time before midnight on the third business day after:
>
> (A) The date of this Agreement.
>
> (B) You have received written notification from your insurance company that all or any part of the claim or contract is not a covered loss under the insurance policy.

(Appellant's App. Vol. II, p. 140). After accepting the replacement cure contract on August 27, 2017, Jenkins also submitted a notice to McGraw cancelling the replacement cure contract that same day.

[7] On May 18, 2018, Jenkins filed his Answer, affirmative defenses, and counterclaim sounding in breach of contract. On January 2, 2019, Jenkins filed his motion for summary judgment on all Counts; while McGraw filed a motion for partial summary judgment on its breach of contract claim only. On March 15, 2019, the trial court conducted a hearing on the cross-motions for summary judgment. On September 19, 2019, the trial court issued its Order on the parties' cross-motions for summary judgment, entering judgment against Jenkins on his counterclaim for breach of contract. The trial court also issued judgment against McGraw on its breach of contract claim, concluding, in pertinent part, that:

> The [c]ourt believes that McGraw's request [*i.e.*, accepting the back-dated provision in the replacement cure contract] would, in essence, require this [c]ourt to put form over substance. The unambiguous language in the HICA is clearly intended to provide a consumer with the option to rescind a contract under certain circumstances. This protection can only be exercised by the consumer if they have knowledge of that right. If the [c]ourt were to adopt McGraw's argument, then how could the original error ever be cured? The required notice of cancellation when accompanied by the relate back clause does not cure the contractual error. It merely put Jenkins back in the exact position he was in when the required language was omitted. Jenkins cannot be expected to exercise his right to cancellation if he was never given notice of that right before July of 2017. McGraw asks that Jenkins be required to give notice of cancellation months before he was advised of his right to give that notice. Such a finding would fly in the face of HICA's intent. This [c]ourt believes that under these circumstances, McGraw has not provided a cure which would allow the consumer an opportunity to exercise his option of rescission. The consumer is simply put in the untenable position of not being provided with notice of his rights that HICA was enacted to insure and protect.

(Appellant's App. Vol. III, p. 132).

[8]     On November 20, 2019, McGraw filed its motion to reconsider, or alternatively, to certify for interlocutory appeal. On February 12, 2020, the trial court issued its Order, concluding, in pertinent part, that:

> In its [m]otion to [r]econsider, [McGraw] alleges that the [c]ourt improperly voided the 'cure contract' which was executed by the parties on October 27, 2017. However, [McGraw] misinterprets this [c]ourt's Order. To the contrary, the [c]ourt did not void the 'cure contract' but rather enforced it. As set out in paragraph 12

of the [c]ourt's original Order, the [c]ourt stated "the [c]ourt finds that Jenkins did timely cancel the contract within three (3) days of acceptance of the 'cure contract' on October 27, 2017." The original contract entered into between the parties improperly and in violation of statute omitted the right to cancel within three (3) days of receiving notice of insurance denial. That right was contained within the 'cure contract' and [Jenkins] exercised that right. The [c]ontract was not voided, it was cancelled pursuant to its terms.

(Appellant's App. Vol. III, p. 173). That same day, the trial court also certified the September 19, 2019, and February 12, 2020 Orders for interlocutory appeal, which we accepted. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

### I. *Standard of Review*

[9]  In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins.*

*Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[10] We observe that, in the present case, the trial court entered findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id.*

## II. *Analysis*

[11] McGraw contends that the trial court erred by not construing the cancellation clause in the replacement cure contract to relate back to the execution date of the original contract thereby erroneously allowing Jenkins "a springing right to cancel in a manner that will lead to absurd results." (Appellant's Br. p. 12).

[12] HICA "requires home improvement suppliers performing any alteration, repair, or modification to the residential property of a consumer for an amount greater than $150 to provide the consumer with a written home improvement contract, containing the nine elements listed in I.C. § 24-5-11-10." *Warfield v. Dorey*, 55 N.E.3d 887, 892 (Ind. Ct. App. 2016). Among other things, HICA requires that these contracts include the name and address of the consumer, the name and address of the contractor, a reasonably detailed description of the improvements, the start and end date, a statement of any contingencies and

what may affect these start and end dates, and in the event the contract price is to be satisfied by the proceeds of an insurance policy, a statement informing the consumer of his right to cancel the contract within three business days after receiving written notification from the insurance company that all or part of the claim is not covered under the policy. *See* I.C. § 24-5-11-10.

> Violations of the HICA are labeled 'deceptive acts' and are actionable by the attorney general or by the consumer. I.C. § 24-5-11-14. The Act provides victims of deceptive acts with the same remedies and penalties granted to victims of deceptive consumer sales under the Indiana Deceptive Consumer Sales Act (DCSA). I.C. § 24-5-11-14. Specifically, '[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater.' I.C. § 24-5-0.5-4(a). An 'uncured deceptive act' means a deceptive act of which the consumer gave proper notice to the supplier and either the supplier made no offer to cure within thirty days of the notice or the act was not cured within a reasonable time. I.C. § 24-5-0.5-2(a)(7). An 'incurable deceptive act' means 'a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead.' I.C. § 24-5-0.5-2(a)(8).
>
> Thus, to establish entitlement to the remedies under HICA, the consumer must show that the deceptive act was either uncured—meaning that notice was given and the deceptive act was not cured—or incurable—meaning that the supplier acted with an intent to defraud or mislead the consumer. I.C. § 24-5-0.5-4(a).

*Warfield*, 55 N.E.3d at 892.

[13]    McGraw now contends that "[d]espite no evidence of any deception or damage to the homeowner," the trial court "chose not to enforce McGraw's contract" because "it originally failed to include immaterial boilerplate language required by" the HICA. (Appellant's Br. pp. 13, 14). McGraw mischaracterizes the statute. It is irrelevant whether the language that was omitted from the contract was boilerplate or important, as soon as one of the statutorily enumerated requirements is not included in the contract, a deceptive act has occurred and the contract is in violation of HICA, regardless of any intent by McGraw. *See* I.C. §§ 24-5-11-10; -14. On October 18, 2017, Jenkins notified McGraw with a Notice of Violations under HICA, which included the omitted right to cancel within three days of the insurance company's partial or complete denial of his claim. On August 24, 2017, McGraw issued a replacement cure contract, which according to its terms, related back to the June 11, 2017, date of the original contract.[1] The main issue now revolves around whether the replacement cure contract can be backdated to the date of the original defective contract in light of HICA's intent.

---

[1] HICA provides that a contractor's failure to give a consumer a contract satisfying the HICA requirements is a deceptive act and brings that deceptive act within the purview of the remedies and penalties of Indiana Code chapter 24-5-0.5. *Hayes v. Chapman*, 894 N.E.2d 1047, 1053 (Ind. Ct. App. 2008). However, to establish entitlement to those remedies, the consumer must show that the deceptive act was either uncured, meaning that notice was given and the deceptive act was not cured, or incurable, meaning that the contractor acted with intent to defraud or mislead the consumer. *Id*. As the defective original contract was cured by McGraw, Jenkins no longer had any recourse under HICA and therefore, unlike McGraw's contention, could only pursue a breach of contract action and not an action sounding in HICA.

[14]     Initially we note that, when interpreting statutes, "[c]ourts must consider the goals of the statute and the reasons and policy underlying the statute's enactment." *Paul v. Stone Artisans*, 20 N.E.3d 883, 887 (Ind. Ct. App. 2014). Additionally, we must consider the effects of our interpretation. *Id.* This court has observed that the purpose of the HICA

> Is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts . . . [because] few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with the well-known abuses found in the home improvement industry, served as an impetus for the passage of [HICA] and contractors are therefore held to a strict standard.

*Benge v. Miller*, 855 N.E.2d 716, 720 (Ind. Ct. App. 2006) (citations omitted). We agree with the trial court's sound reasoning that adopting McGraw's position would be meaningless and not cure the original contract. The main focus of the right to cure was to remedy the deficiencies of the original contract and to grant Jenkins the rights he was not awarded originally despite the provisions enumerated in the HICA. These cured deficiencies only become meaningful if a possibility to exercise these rights exists. By relating the replacement cure contract back to the effective date of the original contract, McGraw attempted to circumvent granting Jenkins an effective remedy. As the HICA is instrumental in protecting consumers with contractors held to a strict standard, the protection can only be effective if the consumer has knowledge of the right. Jenkins received knowledge of his rights on October 27, 2017 when

McGraw offered the replacement cure contract which included a dual right to cancel the contract—either within three business days of the effective date of the contract or within three business days of receiving notice from the insurance company that the claim is partially or completely rejected. Therefore, we conclude that the replacement cure contract is effective from the date of its execution on October 27, 2017, and Jenkins timely exercised his right to cancel the contract.[2]

# CONCLUSION

Based on the foregoing, we hold that Jenkins timely cancelled the agreement entered into with McGraw and affirm summary judgment in favor of Jenkins.

Affirmed.

May, J. and Altice, J. concur

---

[2] Unlike McGraw's contention, the trial court, by effectuating the replacement cure contract's right to cancel provision, did not void the contract but rather enforced it pursuant to its terms. This result does not offer a windfall to Jenkins as McGraw's unjust enrichment claim is still pending.